EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Antonio Jusino Rodríguez<br><br>Peticionario<br><br>v.<br><br>Junta de Retiro del Gobierno de Puerto Rico<br><br>Recurrida | Certiorari<br><br>2024 TSPR 138<br><br>215 DPR ___ |

Número del Caso:  CC-2024-0191

Fecha:  26 de diciembre de 2024

Tribunal de Apelaciones:

    Panel VI

Representantes legales de la parte peticionaria:

    Lcdo. Luis Rafael Rivera Rivera
    Lcdo. Andrés L. Córdova

Representante legal de la parte recurrida:

    Lcdo. Luis Soto Mieses

Materia: Sentencia con Opinión de Conformidad y Opinión Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Antonio Jusino Rodríguez<br><br>     Peticionario<br><br>          v.<br><br>Junta de Retiro del Gobierno de Puerto Rico<br><br>     Recurrida | CC-2024-0191 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de diciembre de 2024.

En esta ocasión debemos determinar si el Sr. Antonio Jusino Rodríguez (señor Jusino Rodríguez o peticionario) tiene derecho a recibir la pensión por viudez que proveía la Ley Núm. 91-2004, *infra*. Esto, aun cuando su esposa —quien reunía los requisitos para retirarse bajo el mencionado estatuto— se mantuvo ejerciendo como maestra por más de 58 años, hasta aprobarse la Ley Núm. 160-2013, *infra.*

Tras un análisis ponderado del asunto en controversia, contestamos la interrogante expuesta en la afirmativa.

Veamos los hechos del caso.

**I**

Surge de autos que para el mes de septiembre de 1959, la Sra. Lilliam González Ortiz (señora González Ortiz o la causante) comenzó a trabajar en el Departamento de Educación como maestra de ciencias y matemáticas. Posterior a ello, la causante contrajo matrimonio con el señor Jusino Rodríguez el 17 de junio de 1994.

Así las cosas, el 24 de enero de 2018, la señora González Ortiz presentó una *Solicitud de Retiro*, con efectividad el 31 de julio de 2018. No obstante, el 13 de julio de 2018, suscribió un *Acuerdo Final de Renuncia Incentivada* con el Departamento de Educación para cesar en el servicio público el 1 de agosto de 2019. El 29 de julio de 2019, el Sistema de Retiro le informó a la causante que su pensión por años de servicios había sido aprobada y que estaría recibiendo una mensualidad de $2,499.75.

El 3 de mayo de 2021, la señora González Ortiz falleció aún casada con el peticionario. En consecuencia, el 3 de junio de 2021, el señor Jusino Rodríguez presentó ante el Sistema de Retiro una *[Solicitud para Recibir los] Beneficios por Defunción [de la Sra.] Lilliam González Ortiz*, Solicitud Núm. 992245 (Solicitud de Beneficios).

Luego del acontecimiento de varios trámites procesales, el 15 de junio de 2023, la Directora del Área de Servicios del Sistema de Retiro (Directora) emitió una decisión sobre la *Solicitud de Beneficios*. En su dictamen, indicó que el Costo de Anualidad para el 1 de agosto de

2019 —momento en que se jubiló la señora González Ortiz— era de $143,619.86. Añadió que la causante había recibido pagos hasta el 31 de mayo de 2021, los cuales ascendían a $54,994.72. Por lo cual, al momento de esta fallecer, el Sistema de Retiro le adeudaba $88,625.14. Sin embargo, la Directora expresó que, el 9 de junio de 2023, la cuantía aludida había sido desembolsada a los beneficiarios de la señora González Ortiz, de conformidad con la Designación de Beneficiarios otorgada por esta el 7 de junio de 2016. Lo anterior, según lo provisto en el Art. 5.11(c) de la Ley Núm. 160-2013, *infra*, el cual regula el reembolso de aportes individuales hechos al Programa de Aportaciones Definidas.

Inconforme, el 12 de julio de 2023, el señor Jusino Rodríguez presentó una *Apelación* ante la Junta de Retiro. Expresó que el Sistema de Retiro había errado al adjudicar su *Solicitud de Beneficios* a la luz de lo dispuesto en el Art. 5.11(c) de la Ley Núm. 160-2013, *infra*, cuando, a su entender, también tenía derecho a recibir la mitad de la pensión mensual que recibía su esposa, conforme lo disponía el Art. 35 de la derogada Ley Núm. 91-2004, *infra*, y el Art. 4.8(c) de la vigente Ley Núm. 160-2013, *infra*. Así pues, añadió que el ente administrativo incidió al tramitar su reclamación en claro menosprecio del debido proceso de ley, la intención legislativa de la Ley Núm. 160-2013, *infra*, y lo resuelto por este Tribunal en *AMPR et als. v. Sist. Retiro Maestros V*, *infra*. De igual manera, adujo que

se le estaba privando de un derecho adquirido, pues su esposa había reunido los requisitos para retirarse previo a derogarse la Ley Núm. 91-2004, *infra*.

El 18 de enero de 2024, la Junta de Retiro emitió una *Resolución*, notificada el 23 de enero de 2024, mediante la cual confirmó la determinación de la Directora. En su dictamen, la Junta de Retiro rechazó aplicar el Art. 4.8(c) de la Ley Núm. 160-2013, *infra*, por entender que los Arts. 4.8(g) y 5.11(c) de la Ley Núm. 160-2013, *infra*, eran los que establecían los parámetros y las alternativas de los beneficios por muerte que tenía disponible el peticionario. Expresó que, en este caso, surgía del expediente un formulario de *Designación de Beneficiarios* debidamente cumplimentado, el cual la causante atestó el 7 de junio de 2016. Por lo que, al haberse dado cumplimiento a lo dispuesto en dicho documento, la Junta de Retiro entendía que el pago de beneficios por defunción notificado el 15 de junio de 2023 era correcto en derecho.

Aún insatisfecho, el 12 de febrero de 2024, el señor Jusino Rodríguez presentó un *Recurso de Revisión Administrativa* ante el Tribunal de Apelaciones. Tras comparecer la Junta de Retiro, el foro apelativo intermedio emitió una *Sentencia* el 19 de marzo de 2024, notificada al día siguiente, confirmando la *Resolución* impugnada. Razonó que el beneficio de pensión por viudez recogido en el Art. 35 de la Ley Núm. 91-2004, *infra*, no podía considerarse un derecho adquirido por el peticionario. Ello pues,

presuntamente, de las disposiciones de la Ley Núm. 160-2013, *infra*, se desprendía que dicho beneficio se había eliminado tanto para los participantes que no cumplían los requisitos para retirarse al 31 de julio de 2014, como para aquellos que sí los cumplían, pero decidieron continuar trabajando en el sistema.

Todavía insatisfecho, el 3 de abril de 2024, el peticionario compareció ante este Tribunal mediante un recurso de *certiorari* y le imputó al Tribunal de Apelaciones haber incurrido en los errores siguientes:

1. Erró el Tribunal de Apelaciones de Puerto Rico al confirmar la determinación administrativa de la Junta de Retiro del Gobierno de Puerto Rico negatoria de la pensión al recurrente aplicando el Artículo 4.8(c), por tratarse del viudo de una pensionada del Sistema de Retiro de Maestros que siguió activa como maestra hasta [el] 2018, pese a que cumplía con todos los requisitos del retiro en [el] 2013.

2. Erró el Tribunal de Apelaciones de Puerto Rico al avalar la violación administrativa del debido proceso de ley, en menoscabo de derechos adquiridos, obviando la intención legislativa de la Ley Núm. 160 del 24 de diciembre de 2013 y desacatando el estado de derecho constitucional establecido por el Tribunal Supremo de Puerto Rico en *AMPR et als. v. Sist. Retiro de Maestros [V]*, 190 DPR 854 (2014).

Contando con el beneficio de la comparecencia de ambas partes, y habiéndose expedido el auto de *certiorari*, procedemos a resolver el asunto en controversia.

## II

### A. Revisión Judicial de Decisiones Administrativas

La revisión judicial de decisiones administrativas tiene como fin "asegurar que los organismos administrativos

actúen conforme a las facultades concedidas por ley". *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016).[1] En vista de ello, esta doctrina nos exige examinar si las determinaciones de las agencias administrativas se tomaron dentro de los poderes delegados y son compatibles con la política pública que las origina. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, *supra*, págs. 625-626; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 941-942 (2010).

No obstante, los tribunales apelativos debemos conceder gran deferencia a los dictámenes de los entes administrativos, debido a la vasta experiencia y conocimiento especializado que tienen en los asuntos que se le han encomendado. *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35; *Torres Rivera v. Policía de PR*, *supra*, pág. 626. Por lo cual, dichas decisiones están amparadas en una presunción de legalidad y corrección, la cual se debe respetar mientras la parte que las impugna no presente evidencia suficiente para derrotarlas. *Rolón Martínez v. Supte. Policía*, *supra*, pág. 46.

Ahora bien, la deferencia reconocida a las decisiones administrativas cede en situaciones en las que: (1) no estén basadas en evidencia sustancial; (2) el ente

---

[1] Véase, además, D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, pág. 669.

administrativo hubiese errado en la aplicación o interpretación de las leyes o los reglamentos que se le encomendaron administrar; (3) el organismo administrativo haya actuado arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesione derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, *supra*, págs. 627-628; *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012); *Asoc. Fcias. v. Caribe Specialty et al. II*, *supra*, págs. 941-942.

En cuanto a lo anterior, la Sec. 4.5 de la Ley Núm. 38-2017, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9675, añade que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Sobre esto, hemos expresado que las determinaciones de hechos deben sostenerse siempre que estén basadas en evidencia sustancial que surja del expediente administrativo. *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36. En ese contexto, evidencia sustancial significa aquella prueba relevante que "una mente razonable podría

aceptar como adecuada para sostener una conclusión". *Capó Cruz v. Jta. de Planificación et al.*, 204 DPR 581, 591 (2020) (citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004)).

Por su parte, en cuanto a las determinaciones de derecho, "los tribunales debe[mos] darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Rolón Martínez v. Supte. Policía*, *supra*, págs. 36-37 (citando a *Torres Rivera v. Policía de PR*, *supra*, pág. 657). Sin embargo, las mismas pueden sustituirse cuando no se encuentre fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36; *Asoc. Fcias. v. Caribe Specialty et al. II*, *supra*, pág. 941.

## B. Ley de Retiro de Maestros

Hasta el 2013, los maestros del Sistema de Instrucción Pública no aportaban al Programa del Seguro Social. Por tanto, en la mayoría de los casos, el único ingreso que estos recibían al momento de retirarse era el proveniente del Sistema de Retiro. A su vez, al fallecer un pensionado, su cónyuge —siendo casi siempre una persona mayor de 60 años— quedaba desprovisto de un ingreso con el que cubrir y sustentar los gastos del hogar.[2]

---

[2] Véase, Exposición de Motivos de la Ley Núm. 8 de 11 de mayo de 1992 (1992 [Parte 1] Leyes de Puerto Rico 25) y Exposición de Motivos de la Ley Núm. Ley Núm. 160-2013, conocida como *Ley del Sistema de Retiro*

Con esto en mente, al aprobarse la Ley Núm. 218 de 6 de mayo de 1951, según enmendada, conocida como *Ley de Retiro de Maestros*, 18 LPRA ant. sec. 321, *et seq.* (Ley Núm. 218-1951) el legislador proveyó para que: "[c]uando el maestro dejare una viuda o la maestra un viudo [e]ste recib[iera] la mitad de [su] renta anual vitalicia". Véase, Sec. 44 de la Ley Núm. 218-1951, *supra*, 18 LPRA ant. sec. 363.[3]

La Ley Núm. 218-1951, *supra*, quedó derogada por la Ley Núm. 91-2004, según enmendada, conocida como *Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico*, 18 LPRA ant. sec. 391, *et seq.* (Ley Núm. 91-2004). Sin embargo, el derecho a la pensión por viudez se mantuvo inalterado en el Art. 35 de esta última legislación.

Ahora bien, con la aprobación de la Ley Núm. 160-2013, según enmendada, conocida como *Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico*, 18 LPRA sec. 393 *et seq.* (Ley Núm. 160-2013), el Sistema de Retiro fue objeto de una reforma significativa. Empero, el Capítulo 4 de la Ley Núm. 160-2013, *supra*, incluyó varias

---

*para Maestros del Estado Libre Asociado de Puerto Rico* (2013 [Parte 3] Leyes de Puerto Rico 1619).

[3] Originalmente, la Sec. 44 de la Ley Núm. 218 de 6 de mayo de 1951, conocida como *Ley de Retiro de Maestros* (1951 Leyes de Puerto Rico 651) disponía que: "cuando el maestro dejare una viuda [e]sta recibirá la cuarta parte de dicha renta anual vitalicia mientras permanezca en su estado de viudez". No obstante, esta disposición fue posteriormente enmendada para conceder el mismo beneficio a los viudos de las maestras pensionadas y, además, aumentar la pensión a la mitad de la renta anual vitalicia. De igual forma, se hizo extensivo a las viudas y los viudos de los maestros que se jubilaron bajo leyes anteriores a la del 1951, computándose el referido beneficio en esos casos a base de la pensión que recibían al momento del fallecimiento.

disposiciones aplicables al "**Program[a] de Beneficios Definidos para participantes en el Sistema al 31 de julio de 2014**". En particular, el Art. 4.8 de la Ley Núm. 160-2013, *supra*, ——sobre pagos de beneficios luego del fallecimiento de estos participantes— dispone que:

(a) Al fallecer una persona que sea pensionado se le pagará su pensión completa por mes en que ocurriere el fallecimiento, para que la disfruten sus beneficiarios. Además, se pagará una quincena adicional final luego del mes en que ocurriese el fallecimiento del pensionado, pero sus beneficiarios o herederos forzosos o legales de no haberse hecho una designación de beneficiarios, recibirán el balance de sus aportaciones siempre y cuando no existan derechos a recibir pensión como beneficiarios, después de deducir aportaciones pagadas, y en ningún caso recibirán menos de mil ($1,000) dólares, en un solo pago. Este beneficio no será de aplicación a los beneficiarios, herederos forzosos o legales de pensionado fallecido que haya ingresado al Sistema a partir del 1 de agosto de 2014.

[...]

**(c) <u>cuando dicho pensionado dejare un viudo, este recibirá la mitad de dicha pensión</u>**.

[...]

(g) Al fallecer un participante, se pagarán los beneficios por defunción a la(s) personas(s) que este hubiera nombrado por escrito en el formulario adoptado por el Sistema. Para que la designación de beneficiarios sea válida debe radicarse ante el Sistema en vida del participante.

(h) Los beneficiarios que al 31 de julio de 2014 reciban algún beneficio por fallecimiento de un pensionado, continuarán recibiendo los mismos sin alteración.

**(i) Los pagos por defunción que correspondan a un participante que se pensione a partir del 1ro de agosto de 2014, se determinarán conforme a lo establecido en [el Capítulo 5 de esta Ley].** (Negrillas y subrayado nuestro). 18 LPRA sec. 396h.

A su vez, el Art. 4.4(a) especifica, en lo pertinente, lo siguiente:

> **(a) Se preservan los derechos de aquellos participantes en servicio activo que al 31 de julio de 2014, contaban con los requisitos indicados en esta sección**. [...] (Negrillas y subrayado nuestro). 18 LPRA sec. 396c.

Por su parte, el Capítulo 5 de la Ley Núm. 160-2013, *supra*, el cual rige lo concerniente al **Programa de Aportaciones Definidas**, detalla en su Art. 5.11 los beneficios a ser provistos por la muerte de un participante de este programa. Sobre ese aspecto, este establece:

> (c) Muerte de un pensionado. —
>
> (1) Reembolso de aportaciones individuales. —En aquellos casos en que fallezca un pensionado sin antes haber agotado el balance de todas sus aportaciones individuales hechas al Programa de Aportaciones Definidas previo al momento de comenzar a recibir la pensión, sus beneficiarios designados ante el Sistema o los herederos del participante en caso de no existir beneficiario designado tendrán dos opciones: (1) continuarán recibiendo los pagos mensuales de la pensión hasta que se agote dicho balance de las aportaciones realizadas por el pensionado mientras estuvo en servicio activo, o (2) podrán solicitar por escrito al Director Ejecutivo el desembolso de dicho balance en un pago global, sujeto a cualquier deducción correspondiente por ley. Si al momento del fallecimiento del pensionado, las aportaciones realizadas por dicho pensionado al Programa de Aportaciones Definidas previo al momento de comenzar a recibir la pensión, hubiesen sido agotadas por el pensionado mediante los pagos mensuales de pensión ya recibidos, se descontinuarán los pagos mensuales y sus beneficiarios y/o herederos no tendrán derecho a recibir pagos adicionales.
>
> (2) Pensión por traspaso. —
>
> > (A) Los participantes del Programa de Aportaciones Definidas podrán elegir, al retirarse, recibir una pensión por retiro menor de la que tienen derecho, y proveer con la diferencia, según se determinare

actuarialmente, una o más pensiones a favor de sus dependientes, cuyos nombres aparecerán en una orden escrita radicada con el Director Ejecutivo. Este privilegio se concederá siempre que el participante se someta a examen médico y llene los requisitos de salud que establecerá la Junta en sus reglamentos y siempre que quede probado, a satisfacción del Director Ejecutivo, que las personas designadas para recibir la pensión por traspaso son dependientes del participante, y siempre que ninguna pensión por traspaso que resultare del ejercicio de este privilegio fuere menor de doscientos cuarenta dólares ($240) al año, y que el monto de dicha pensión por traspaso no exceda del monto de la pensión por retiro reducida, que tenga derecho el participante, de acuerdo con su opción.

(B) El Director Ejecutivo determinará el monto de las pensiones por traspaso de acuerdo con la orden escrita del participante. Toda pensión por traspaso comenzará a percibirse a partir del día siguiente al fallecimiento del participante. Si una (1) o más de las personas designadas como beneficiarios no sobreviviere al participante, no será pagadera la correspondiente pensión por traspaso. Una vez que la pensión por retiro haya sido concedida, esté vigente y sea pagadera, el Director Ejecutivo no permitirá cambio alguno en la orden escrita radicada en el Sistema; salvo que si el participante falleciere dentro de los treinta (30) días siguientes a la fecha de su retiro, se considerará que el participante ha fallecido en servicio activo.

(C) Las pensiones concedidas bajo este inciso tendrán carácter vitalicio y serán pagaderas en plazos mensuales, y éstas no podrán aumentarse, disminuirse, revocarse o derogarse, salvo cuando hubiesen sido concedidas por error, o cuando en forma explícita se disponga de otro modo. El primer pago de una pensión se hará por la fracción de mes que transcurra hasta la terminación del primer mes; y el último pago se hará hasta el final del mes en que sobreviniere la muerte del beneficiario. 18 LPRA sec. 397j.

Ahora bien, con respecto a los maestros que aportaban al Sistema de Retiro antes de que entrara en vigor la Ley Núm. 160-2013, *supra*, el Art. 5.3 aclara que:

**(a) <u>Al entrar en vigor esta ley, se preservarán los beneficios de retiro acumulados de los participantes del Sistema que comenzaron a trabajar antes del 1ro de agosto del 2014</u>, basado en los años de servicio acumulados y el salario promedio hasta esa fecha. <u>Dichos beneficios acumulados se calcularán de acuerdo con [con el Capítulo 4 de esta ley]</u>.**

**(b) <u>Aquellos participantes que al 31 de julio de 2014 tenían derecho a retirarse y recibir algún tipo de pensión bajo este capítulo</u>, por haber cumplido con los requisitos de años de servicio y edad aquí dispuestos, <u>podrán retirarse en cualquier fecha posterior y tendrán derecho a recibir la pensión que le corresponda, calculada bajo [el Artículo 4.4 de esta Ley]</u> basado en los salarios y años de servicios acumulados hasta el 31 de julio de 2014, sumada a la cantidad que tuvieran derecho a recibir bajo el Programa de Aportaciones Definidas.**

(c) A partir del 1ro de agosto de 2014, el participante no acumulará años de servicio adicionales para propósitos de determinar el salario promedio y computar una pensión bajo el Programa de Beneficios Definidos. El participante no recibirá reconocimiento por servicios no cotizados, ni podrá transferir aportaciones o devolver aportaciones sobre periodos trabajados antes del 31 de julio de 2014, excepto por aquellas excepciones expresamente establecidas en este capítulo. (Negrillas y subrayado nuestro). 18 LPRA sec. 397b.

Así las cosas, en *AMPR et als. v. Sist. Retiro Maestros V*, 190 DPR 854 (2014), tuvimos la oportunidad de evaluar la validez constitucional de la Ley Núm. 160-2013, *supra*. Al hacerlo, **dispusimos que los Arts. 3.6, 3.9, 3.11, 4.3(a), 4.4, 4.6(a)(b)(c) y 5.1 a 5.5, eran inconstitucionales en la medida en que menoscababan sustancialmente y de manera irrazonable los derechos**

**contractuales que fueron adquiridos por los participantes al amparo de los términos dispuestos en la Ley Núm. 91-2004,** *supra*.

Sin embargo, en esa ocasión sostuvimos la constitucionalidad de la Sec. 2 de la Ley Núm. 160-2013, *supra*, la cual derogó ciertas leyes especiales que concedían varias gracias legislativas, por entender que estas no formaban parte de la pensión ni creaban un interés propietario. De igual forma, validamos el Art. 4.9 Ley Núm. 160-2013, *supra*, el cual eliminó beneficios adicionales a aquellos participantes que se retiraran a partir del 1 de agosto de 2014.[4]

Por último, aclaramos que los participantes que entraron a cotizar al Sistema de Retiro con posterioridad a la aprobación de la Ley Núm. 160-2013, *supra*, tenían derecho solamente a la pensión que establece ese estatuto, pues esa fue la obligación que el Estado contrajo con ese grupo de trabajadores.[5]

---

[4] En particular, la Ley Núm. 160-2013, 18 LPRA sec. 393 *et seq.*, eliminó la aportación al plan de salud (hasta $100 al mes), el bono para medicamentos ($100 al año) y el aguinaldo de Navidad ($600 al año) para quienes se acogiesen al retiro a partir del 1 de agosto de 2014. Asimismo, eliminó el bono de verano ($100) para todos los participantes y, además, redujo el aguinaldo de Navidad de $600 a $200 para quienes se hubiesen jubilado antes del 1 de agosto de 2014. Véase, *AMPR et als. v. Sist. Retiro Maestros V*, 190 DPR 854, 879 (2014).

[5] En *Bayrón Toro v. Serra*, 119 DPR 605, 607-608 (1987) este Tribunal expresó que "un participante en un plan de retiro tiene un interés propietario de naturaleza contractual protegido por la garantía constitucional contra el menoscabo de obligaciones contractuales". Por lo cual, el Estado puede, antes de que un empleado se jubile, enmendar los términos del sistema de retiro siempre y cuando las enmiendas sean razonables y adelanten su solvencia actuarial. A su vez, en *Trinidad Hernández et al. v. ELA et al.*, 188 DPR 828 (2013), se reiteró que una reforma al sistema de retiro gubernamental será constitucional si es razonable y necesaria para adelantar su solvencia actuarial, y no

## C. Normas de Hermenéutica

Los principios de hermenéutica de nuestro ordenamiento sirven de base cuando los tribunales deben interpretar las leyes. *Brau, Linares v. ELA et als.*, 190 DPR 315, 338 (2014). Como principio rector, corresponde evaluar, en primera instancia, el texto de la ley. Esto pues, "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de 2020, 31 LPRA sec. 5341. Esto responde a que, cuando el legislador se ha manifestado con un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. *Spyder Media Inc. v. Mun. de San Juan*, 194 DPR 547, 555 (2016); *Báez Rodríguez et al. v. E.L.A.*, 179 DPR 231, 245 (2010).

En el cumplimiento de esta función es necesario armonizar, en la medida en que sea posible, "todas las disposiciones de la ley para lograr **una interpretación integrada, lógica y razonable** de la intención legislativa". (Negrilla suplida). *Spyder Media Inc. v. Mun. de San Juan*, *supra*, pág. 555 (citando a *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 266 (2010)). Así pues, **"las secciones, los párrafos, las frases y las oraciones que componen una ley no deben ser interpretadas de forma aislada, sino que deben analizarse en conjunto tomando en consideración todo su**

---

existen medidas menos onerosas para lograr ese fin. Véase, además, *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1 (2010).

**contexto de manera integral**". (Negrilla suplida). *Bco. Santander v. Correa García*, 196 DPR 452, 466 (2016). Ahora bien, si surge alguna ambigüedad con el texto del estatuto, el tribunal debe asegurar el cumplimiento con los propósitos legislativos. *Morales et als. v. Marengo et al.*, 181 DPR 852, 859 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 362 (2009).

Por último, no podemos olvidar que, como norma de hermenéutica, **las leyes que crean derechos al disfrute de pensiones deben ser interpretadas de manera liberal a favor del beneficiario, a fin de que se cumpla el propósito reparador para las cuales fueron aprobadas**. *Calderón v. Adm. Sistemas de Retiro*, 129 DPR 1020, 1034 (1992).

### III

En su recurso ante nos, el señor Jusino Rodríguez plantea, en primer lugar, que los foros recurridos erraron al concluir que no procedía concederle la pensión por viudez reclamada. A su entender, ese derecho ―el cual se encontraba reconocido en el Art. 35 de la Ley Núm. 91-2004, *supra*― quedó preservado en el Art. 4.8(c) de la Ley Núm. 160-2013, *supra*, para aquellos cónyuges supérstites de pensionados ―como su esposa― que reunían los requisitos para retirarse bajo la Ley Núm. 91-2004, *supra*, pero continuaron trabajando al entrar en vigor la Ley Núm. 160-2013, *supra*. Así pues, entiende que los foros inferiores hicieron una interpretación errónea del estatuto al concluir que este solo podía recibir el reembolso de las

aportaciones realizadas por la causante al Programa de Aportaciones Definidas, conforme a lo dispuesto en el Art. 5.11(c) de la Ley Núm. 160-2013, *supra*. En la alternativa, alega que los foros recurridos actuaron en menoscabo de un derecho que adquirió bajo la Ley Núm. 91-2004, *supra*, según lo resuelto por este Tribunal en *AMPR et als. v. Sist. Retiro Maestros V*, *supra*.

Por su parte, la Junta de Retiro se opuso. Sostuvo que la única interpretación razonable que se le puede brindar a la intención legislativa detrás de la Ley Núm. 160-2013, *supra*, es que el inciso (c) del Art. 4.8, solo es aplicable a aquellos cónyuges supérstites de participantes que ya estaban recibiendo una pensión antes de entrar en vigor este estatuto. A su entender, todos los demás casos quedan cobijados por el Art. 5.11(c). Expone que lo anterior queda evidenciado al llevar a cabo una lectura del Art. 4.8(i) de la Ley Núm. 160-2013, *supra*, el cual dispone que los pagos por defunción que correspondan a un participante que se pensione a partir del 1ro de agosto de 2014, se determinarán conforme a lo establecido en el Capítulo 5.

Luego de evaluar con detenimiento la controversia de epígrafe, entendemos que le asiste la razón al peticionario. Veamos.

Conforme surge de la Exposición de Motivos de la Ley Núm. 160-2013, *supra*, al aprobarse este estatuto la Asamblea Legislativa tuvo el interés de asegurar que **los**

**beneficios acumulados por los maestros hasta el día de su vigencia fuesen pagados de conformidad con lo dispuesto en la Ley Núm. 91-2004,** *supra*. Exposición de Motivos de la Ley Núm. 160-2013 (2013 [Parte 3] Leyes de Puerto Rico 1635-1636).[6] En ese aspecto, si bien la Ley Núm. 160-2013, *supra*, congeló la acumulación de beneficios recibidos por los participantes al amparo de la Ley Núm. 91-2004, *supra* (eliminando la acumulación de nuevos beneficios bajo el Plan de Beneficios Definidos) **mantuvo la acumulación ganada por estos hasta ese entonces.** Íd., pág. 1634.

Así las cosas, al examinar las disposiciones de la Ley Núm. 160-2013, *supra*, colegimos que la pensión por viudez fue uno de esos beneficios preservados. Esto pues, a diferencia de las gracias legislativas que fueron eliminadas por medio de la Sec. 2 y el Art. 4.9 de la Ley Núm. 160-2013, *supra*, la pensión viudal quedó recogida de manera expresa en el Art. 4.8(c) del estatuto. A su vez, consideramos que este artículo no solo aplica a los cónyuges supérstites de participantes que estaban pensionados antes de entrar en vigor la Ley Núm. 160-2013, *supra*, **sino que también rige sobre los participantes que aportaban al Sistema de Retiro para el 31 de julio de 2014**

---

[6] Véase, además, *Informe Positivo sobre el P. de la C. 1589*, 21 de diciembre de 2013, 17ma Asamblea Legislativa, 2da Sesión Extraordinaria, págs. 1, 5 y *Segundo Informe Positivo sobre el P. de la C. 1589*, 23 de diciembre de 2013, 17ma Asamblea Legislativa, 2da Sesión Extraordinaria, págs. 10-11.

**y tenían derecho a retirarse para ese entonces.[7]** En ese sentido, nos parece evidente que el Art. 4.8(i) de la Ley Núm. 160-2013, *supra*, pretende remitir a las disposiciones del Capítulo 5 (sobre pagos por defunción) a los beneficiarios de aquellos participantes que comenzaron a cotizar luego de derogarse la Ley Núm. 91-2004, *supra*.

En vista de que la pensión por viudez fue un beneficio acumulado por la causante bajo la Ley Núm. 91-2004, *supra*, y que, además, el mismo fue reconocido y preservado en la Ley Núm. 160-2013, *supra*, resulta forzoso concluir que el señor Jusino Rodríguez tiene derecho a recibir la misma. Avalar la postura de la Junta de Retiro vulneraría los derechos de participantes como la causante, quienes a la fecha de implementarse la Ley Núm. 160-2013, *supra*, pertenecían a un grupo ínfimo de 88 personas que contaban con 60 años o más de edad y 40 años o más de servicio. Véase, *AMPR et als. v. Sist. Retiro Maestros V*, *supra*, pág. 873. A su vez, penalizaría a una servidora pública que optó por mantenerse activa trabajando en un momento en que el Departamento de Educación carecía de profesionales diestros en las materias que esta enseñaba, estando bajo el entendido de que sus derechos no se verían afectados si se retiraba luego.

---

[7] Sobre el particular, destacamos que el título del Capítulo 4 de la Ley Núm. 160-2013, *supra*, dispone con claridad que sus disposiciones son aplicables al Programa de Beneficios Definidos de participantes que estuviesen aportando al Sistema de Retiro para el 31 de julio de 2014.

Sobre lo anterior, tomamos conocimiento de la Carta Circular Núm. 19-2010-2011, emitida por el Secretario del Departamento de Educación el 3 de marzo de 2011, según enmendada, en la cual se clasifican las matemáticas y algunas ciencias como materias de **difícil reclutamiento**. Véase, además, Carta Circular Núm. 20-2010-2011 de 12 de mayo de 2011 y Carta Circular Núm. 22-2010-2011 de 20 de junio de 2011.[8]

## IV

Por todo lo anterior, se revoca la *Sentencia* del Tribunal de Apelaciones. En consecuencia, se ordena a la Junta de Retiro a pagarle al señor Jusino Rodríguez, de manera retroactiva y prospectiva, la pensión por viudez que dispone el Art. 4.8(c) de la Ley Núm. 160-2013, *supra*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió

---

[8] De igual forma, en el *Informe Conjunto de la Comisión de Educación, Formación y Desarrollo del Individuo; y Comisión de Hacienda y Finanzas Públicas*, al evaluarse el Proyecto del Senado 1221, el cual tenía como fin crear la "Ley para el Desarrollo del Maestro de Ciencias y Matemáticas del Siglo XXI", las Comisiones en cuestión reconocieron que:

> "El Departamento de Educación de Puerto Rico denomina a los maestros especializados en Matemáticas y Ciencias como "maestros de difícil reclutamiento", ya que los estudiantes que se especializan en estas áreas, en su gran mayoría, no se dedican a enseñar sus conocimientos como maestros, sino que terminan graduándose de ingeniería. En Puerto Rico, existe un éxodo de profesionales, producto, entre otras cosas, de la crisis económica que sufre el País, así como por la falta de demanda en el empleo bien remunerado. Así pues, consciente de la situación del éxodo de profesionales, como también del difícil reclutamiento de estudiantes graduados especializados en matemáticas y ciencias, se presentó la medida de autos, la cual busca resolver el problema del reclutamiento de maestros especializados en estas dos áreas. […]". *Informe Conjunto de la Comisión de Educación, Formación y desarrollo del Individuo; y Comisión de Hacienda y Finanzas Públicas*, 5 de diciembre de 2016, 17ma Asamblea Legislativa, 4ta Sesión Extraordinaria, pág. 2.

una Opinión de Conformidad a la cual se une la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Martínez Torres emitió una Opinión Disidente. El Juez Asociado señor Feliberti Cintrón se inhibió.

                                    Javier O. Sepúlveda Rodríguez
                                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Jusino Rodríguez

    Peticionario

       v.                    CC-2024-0191    *Certiorari*

Junta de Retiro del Gobierno
de Puerto Rico

    Recurrida

Opinión de Conformidad emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 26 de diciembre de 2024.

Hoy, este Tribunal tenía ante su consideración la resolución de un caso que merecía la demostración de nuestra más humana sensibilidad. En específico, veníamos llamados a resolver si el sacrificio de toda una vida dedicada al más noble de los servicios públicos, -- el de la enseñanza en las aulas de nuestro País --, hacía merecedora a la Sra. Lilliam González Ortiz (en adelante, "señora González Ortiz") de cierto beneficio que, tras su muerte, pudiera ser traspasado a su viudo y parte aquí peticionaria, el Sr. Antonio Jusino Rodríguez (en adelante, "señor Jusino Rodríguez").

Para resolver lo anterior, solo bastaba, como bien se hizo en la *Sentencia* que antecede, con recurrir a lo claramente establecido en las legislaciones aplicables a la controversia. A saber, la Ley Núm. 91-2004, 18 LPRA ant. sec. 391 *et seq.*, y la Ley Núm. 160-2013, 18 LPRA sec. 393 *et seq.* Al acudir a éstas, la correcta disposición del presente recurso, -- contrario a como quería hacer ver la Junta de Retiro del Gobierno de Puerto Rico (en adelante, "Junta de Retiro") -- era de fácil consecución, razón por la cual no entendemos el porqué de esta innecesaria litigación. Veamos, a grandes rasgos, la situación fáctica que nos trajo hasta aquí.

La señora González Ortiz nació en el año 1938. En el año 1959, a sus veintiún (21) años de edad, ésta tomó la honrosa decisión de incorporase a las filas del Magisterio de nuestro País, como maestra de las materias de ciencias y matemáticas. A partir de entonces, ésta dedicó toda su vida productiva a distribuir el pan de la enseñanza entre las niñas y niños puertorriqueños. No fue hasta el año 2018, a sus ochenta (80) años de edad, que ésta finalmente se acogió a su merecido retiro.

Sin embargo, el azaroso camino de la vida la llevó a fallecer a tan solo tres (3) años de haberse jubilado. Así las cosas, el señor Jusino Rodríguez, viudo de la maestra finada, solicitó a la Junta de Retiro el recibo de los beneficios por defunción de la señora González Ortiz, a los que claramente tenía derecho.

En específico, el señor Jusino Rodríguez solicitó que se le pagara la mitad de la pensión que recibía su difunta esposa, en virtud del Artículo 35 de la derogada Ley Núm. 91-2004, 18 LPRA ant. sec. 392a y del Artículo 4.8(c) de la Ley Núm. 160-2013, 18 LPRA sec. 396h, vigente en la actualidad.[1] Lo anterior, por entender, -- correctamente --, que como la señora González Ortiz cumplía con los años de servicio y edad para retirarse al momento de aprobarse la reforma al Sistema de Retiro que supuso la Ley Núm. 160-2013, *supra*, ésta había adquirido y mantenido ciertos beneficios de acuerdo con la ley anterior, dentro de los cuales se encontraba el beneficio aquí en controversia: la pensión por viudez.

No obstante ello, y con un estado de derecho que deslumbra por su claridad, la Junta de Retiro inicialmente, y el Tribunal de Apelaciones posteriormente, concluyeron que el señor Jusino Rodríguez no era merecedor de los $1,249.87 que le correspondían como pago de la pensión por viudez, tras el fallecimiento de la señora González Ortiz. Lo anterior, tras entender que el beneficio por defunción solicitado había

---

[1] En lo aquí pertinente, el Artículo 35 de la legislación derogada disponía que "[c]uando el maestro dejare una viuda o la maestra un viudo éste recibirá la mitad de dicha renta anual vitalicia retrotrayéndose esta disposición para cubrir a los viudos que no reciben este beneficio". Ley Núm. 91-2004, 18 LPRA ant. sec. 392a.

Por otro lado, el Artículo 4.8 (c) de la ley vigente, expresa diáfanamente que "[c]uando dicho pensionado dejare un viudo, este recibirá la mitad de dicha pensión". 18 LPRA sec. 396h.

Además, esta última ley, que derogó la ley anterior, manifiesta palmariamente en su Exposición de Motivos "que los beneficios acumulados por los maestros hasta el día de vigencia de esta ley subsisten y se pagarán de acuerdo a lo establecido en la Ley 91 según ésta lee actualmente". Exposición de Motivos, Ley Núm. 160-2013 (2013 [Parte 3] Leyes de Puerto Rico 1635-1636).

sido eliminado con la aprobación de la nueva Ley Núm. 160-2013, *supra*, por lo cual el señor Jusino Rodríguez no tenía derecho a la aludida pensión.[2]

La conclusión a la que llega la Junta de Retiro, no solo es errónea en derecho como muy bien concluye la *Sentencia* que hoy se certifica, sino que, además, constituye un acto de temeridad tal que nos resulta, como mínimo, reprochable. Es momento ya de que el derecho deje de tolerar este tipo de absurdos.

La administración de la Justicia en Puerto Rico no puede ser cómplice de semejantes actuaciones de parte de las instituciones gubernamentales. Máxime cuando se trata de una cuestión de derecho tan evidente y que trastoca la propia subsistencia de una persona.

**Un mejor trato es lo que merecen los servidores y servidoras públicos que tras dedicarle toda una vida al servicio de nuestro País solo exigen que se cumpla con lo que el Estado, en agradecimiento a su dedicación, les prometió. Con la *Sentencia* que hoy emite este Tribunal, nosotros hacemos nuestra parte.**

---

[2] Como es sabido, la Ley Núm. 160-2013, 18 LPRA sec. 393 *et seq.*, supuso una reforma significativa del Sistema de Retiro para las maestras y maestros del sistema público de enseñanza del Estado Libre Asociado de Puerto Rico. Ello implicó la eliminación de ciertos beneficios o dádivas que la ley de retiro anterior ofrecía a las maestras y maestros pensionados. Entre éstos, la nueva legislación eliminó la aportación al plan de salud (hasta $100 al mes), el bono para medicamentos, el aguinaldo de Navidad, el bono de verano, entre otros. **Sin embargo, tal y como hoy se resuelve, la ley actual no trastocó el beneficio que aquí se reclama.**

Es por todo lo anterior que estamos conforme con la decisión que hoy toma este Tribunal.


                                        Ángel Colón Pérez
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Jusino Rodríguez

    Peticionario

      v.                    CC-2024-0191

Junta de Retiro del
Gobierno de Puerto Rico

    Recurrida

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 26 de diciembre de 2024.

Nuestra tarea en esta controversia estaba dirigida a determinar si el cónyuge supérstite de una maestra del Departamento de Educación que se retiró en 2018 —luego de entrar en vigor la Ley Núm. 160-2013, infra— posee el beneficio de la pensión por viudez. Para resolver esta interrogante, era necesario determinar si la pensión por viudez establecida en el Art. 4.8 (c) de la Ley Núm. 160-2013, infra, fue uno de los beneficios preservados por el legislador en el Art. 4.4 (a) de dicha ley, y si el peticionario aquí es merecedor del mismo. Sin embargo, la Sentencia que hoy emite este Tribunal va más allá y equivocadamente establece que la pensión

por viudez estatuida en la Ley Núm. 160-2013, infra, se trata tanto de un derecho adquirido como de un beneficio preservado por el legislador.

Por los fundamentos que expondré a continuación, adelanto que disiento respetuosamente de este proceder. El texto de la ley es claro. Bastaba con leerlo y armonizar todas sus disposiciones, su exposición de motivos y las definiciones provistas, para entender que su propósito es evitar que el Sistema de Retiro quede insolvente y así proteger las pensiones de los maestros. Para cumplir este propósito, la Ley Núm. 160-2013, infra, eliminó el beneficio de pensión por viudez para los maestros que no se retiraron con anterioridad a su vigencia. Por esto, coincido con la afirmación realizada en el voto particular de conformidad, "llegar a la conclusión de esta controversia es ejercicio de fácil consecución". Véase, voto particular de conformidad del Juez Asociado señor Colón Pérez, pág. 3. Sin embargo, para arribar al resultado propuesto, la Sentencia malinterpreta el texto de la Ley Núm. 160-2013, infra, ignora su intención legislativa y le triplica a un viudo no participante del Sistema de Retiro la cantidad que le corresponde como beneficiario de su causante.

I

Según se desprende de los hechos, la Sra. Lilliam González Ortiz (señora González Ortiz) trabajó en el Departamento de Educación como maestra de ciencias y matemáticas desde 1959. Posterior a ello, la señora González

Ortiz contrajo matrimonio con el Sr. Antonio Jusino Rodríguez (señor Jusino Rodríguez o peticionario) en el año 1994. En lo pertinente al caso, la señora González Ortiz presentó una solicitud de retiro el 24 de enero de 2018. Conforme a esto, el Sistema de Retiro le informó que su pensión por años de servicios había sido aprobada por una mensualidad de $2,499.75.

No obstante, la señora González Ortiz falleció el 3 de mayo de 2021. Posterior a este suceso, el 3 de junio de 2021 el señor Jusino Rodríguez le solicitó al Sistema de Retiro la pensión por viudez establecida en el inciso (c) del art. 4.8 de la Ley Núm. 160-2013, infra. En respuesta, la Directora del Área de Servicios del Sistema de Retiro le explicó que, hasta ese momento, la señora González Ortiz había recibido $54,994.72 en beneficios. **Por esta razón, al momento del fallecimiento de la señora González Ortiz, el Sistema de Retiro había desembolsado el sobrante de $88,625.14 a los beneficiarios que ella misma había designado en el año 2016**, según lo establecido en el Art. 5.11 (c) de la Ley Núm. 160-2013, infra.

Inconforme, el señor Jusino Rodríguez presentó una Apelación ante la Junta de Retiro. En su escrito, se sostuvo en que tenía derecho a recibir la mitad de la pensión mensual que recibía su esposa, conforme lo disponía el Art. 35 de la derogada Ley Núm. 91-2004, infra, y según lo dispone el Art. 4.8(c) de la vigente Ley Núm. 160-2013, infra. De esta forma, argumentó que se le estaba privando de un derecho adquirido,

pues su esposa había reunido los requisitos para retirarse previo a derogarse la Ley Núm. 91-2004, *infra*.

En vista de que la Junta de Retiro confirmó la determinación de la Directora, el señor Jusino Rodríguez presentó un Recurso de Revisión Administrativa ante el Tribunal de Apelaciones. El foro apelativo intermedio confirmó la Resolución impugnada y razonó que el beneficio de pensión por viudez recogido en el Art. 35 de la Ley Núm. 91-2004, *infra*, no podía considerarse un derecho adquirido por el peticionario. Según el Tribunal de Apelaciones, la Ley Núm. 160-2013, *infra*, eliminó el beneficio de pensión por viudez tanto para los participantes que no cumplían los requisitos para retirarse al 31 de julio de 2014, como para aquellos que sí los cumplían, pero decidieron continuar trabajando en el sistema.

Como resultado de la determinación del Tribunal de Apelaciones, el peticionario compareció ante este Tribunal mediante recurso de *certiorari*. En su escrito argumentó que los foros recurridos se equivocaron en sus determinaciones pues, según su criterio, el Art. 4.8 (c) de la Ley Núm. 160-2013, *infra*, le garantiza su pensión por viudez. En la alternativa, argumentó que las determinaciones recurridas menoscabaron sus derechos adquiridos, en violación de la intención legislativa de la Ley Núm. 160-2013, *infra*, y lo resuelto por este Tribunal en AMPR *et als*. v. Sist. Retiro Maestros V, 190 DPR 854 (2014).

Luego de evaluar estos argumentos, considero que el peticionario no tiene razón. Quien único poseía un derecho adquirido era su esposa, la señora González Ortiz, a recibir la totalidad de su pensión. De otra parte, el beneficio de pensión por viudez no fue preservado por el legislador para los participantes que se retiraron posterior a la vigencia de la ley en Ley Núm. 160-2013, infra. El legislador solo preservó este derecho a las personas que decidieron acogerse al retiro en el periodo de ventana establecido en el Art. 4.4(a) de la Ley Núm. 160-2013, infra.

II

**A. *Derechos adquiridos y beneficios del Sistema de Retiro de Maestros***

En AMPR *et als*. v. Sist. Retiro Maestros V, 190 DPR 854 (2014), evaluamos la validez constitucional de la Ley Núm. 160-2013, infra. Esta ley tuvo el efecto de eliminar la aportación al plan de salud (hasta $100 al mes), el bono para medicamentos ($100 al año), el bono de verano ($100) y el aguinaldo de Navidad ($600 al año) para las personas que se jubilaron a partir del 1 de agosto de 2014. AMPR *et als*. v. Sist. Retiro Maestros V, supra, pág. 879. Al analizar esta pieza legislativa, discutimos que el Art. 4.4(a) de la Ley Núm. 160-2013, infra —el cual eliminó los beneficios previamente enumerados— estableció una ventana de retiro temprano para los participantes que, sin importar su edad, tenían los 30 años de servicio entre el 1 de agosto de 2014 y el 30 de junio de 2016. Íd., pág. 876. Luego de examinar estas disposiciones, fuimos diáfanos al disponer que solo

los que se retiraron en dicha ventana, son acreedores de esos beneficios adicionales que la Ley Núm. 160-2013, infra, eliminó. Íd.

Para sustentar nuestra determinación y avalar la eliminación y reducción de estos beneficios, nos remitimos a lo discutido en Trinidad Hernández *et al.* v. ELA *et al.*, 188 DPR 828 (2013). Allí establecimos que "los beneficios otorgados mediante las leyes especiales que la Reforma del Sistema de Retiro eliminan, no forman parte de su pensión". Trinidad Hernández *et al.* v. ELA *et al.*, supra, pág. 839, esc. 2. A esos efectos, concluimos que estos beneficios se catalogan como "gracias legislativas que no creaban un interés propietario". Véase, Domínguez Castro *et al.* v. E.L.A. I, 178 DPR 1, 67-70 (2010). Además, al comparar el Art. 1-101 de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro del Gobierno de Puerto Rico y sus Instrumentalidades, 3 LPRA sec. 761, con el Art. 3 de la Ley Núm. 91-2004, infra, 18 LPRA sec. 391a, notamos que la legislación habilitadora del Sistema de Retiro "estableció claramente que esos beneficios adicionales no forman parte de la pensión". AMPR *et als.* v. Sist. Retiro Maestros V, supra, pág. 879. Asimismo, es importante destacar que en aquella ocasión dispusimos que los participantes que entraron a cotizar al Sistema de Retiro con posterioridad a la aprobación de la Ley Núm. 160-2013, infra, tenían derecho únicamente a la pensión dispuesta en ese estatuto. Íd., pág. 880. En virtud de esto, establecimos

de manera clara que "esa fue la obligación contractual que el Estado asumió con ese grupo de trabajadores". Íd.

**B. *Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico***

El Art. 35 de la derogada Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico del 2004, 18 LPRA ant. sec. 391 *et seq.*, establecía que "cuando el maestro dejare una viuda o la maestra un viudo éste recibirá la mitad de dicha renta anual vitalicia […]". Véase, Art. 35 de la Ley Núm. 91-2004, 18 LPRA ant. sec. 392a. Ahora bien, esa Ley fue derogada y sustituida por la Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico del 2013, 18 LPRA sec. 293 *et seq.* Esta ley establece en su Capítulo 4, titulado "programa de beneficios definidos para participantes en el sistema al 31 de julio de 2014", que "se preservan los derechos de aquellos participantes en servicio activo que al 31 de julio de 2014, contaban con los requisitos indicados". Véase, Art. 4.4 (a) de la Ley Núm. 160-2013, 18 LPRA sec. 396c. Por otra parte, dispone en el Art. 4.8 inciso (c) que "cuando un pensionado dejare un viudo, este recibirá la mitad de dicha pensión". Según el estatuto, se considera pensionado aquel "participante que recib[e] una pensión del Sistema". Véase, Art. 1.1 (q) de la Ley Núm. 160-2013, 18 LPRA sec. 393.

No obstante, el inciso (i) del Art. 4.8 de la Ley Núm. 160-2013, 18 LPRA sec. 396h, dispone que "los pagos por defunción que correspondan a un participante que se pensione a partir del 1ro de agosto de 2014, se determinarán conforme

a lo establecido en el Capítulo 5 de esta Ley". De modo que, en casos como el de autos, es necesario tramitar los pagos a través del Art. 5.11, titulado "Beneficios por Muerte, Incapacidad o Enfermedad Terminal", infra. Dicho artículo dispone en su inciso (c), titulado "Muerte de un Pensionado" (participante que reciba una pensión) que:

> En aquellos casos en que fallezca un pensionado [participante que reciba una pensión] sin antes haber agotado el balance de todas sus aportaciones individuales hechas al Programa de Aportaciones Definidas previo al momento de comenzar a recibir la pensión, sus beneficiarios designados ante el Sistema o los herederos del participante en caso de no existir beneficiario designado tendrán dos opciones:
>
> (i) continuarán recibiendo los pagos mensuales de la pensión hasta que se agote dicho balance de las aportaciones realizadas por el pensionado mientras estuvo en servicio activo, o
>
> (ii) podrán solicitar por escrito al Director Ejecutivo el desembolso de dicho balance en un pago global, sujeto a cualquier deducción correspondiente por ley. **Si al momento del fallecimiento del pensionado, las aportaciones realizadas por dicho pensionado al Programa de Aportaciones Definidas previo al momento de comenzar a recibir la pensión, hubiesen sido agotadas por el pensionado mediante los pagos mensuales de pensión ya recibidos, se descontinuarán los pagos mensuales y sus beneficiarios y/o herederos no tendrán derecho a recibir pagos adicionales.** (Énfasis suplido). Véase, Art. 5.11 de la Ley Núm. 160-2013, supra, 18 LPRA sec. 397j.

III

A.

Luego de analizar detenidamente la Ley Núm. 160-2013, supra, es evidente que la letra de esta pieza legislativa "deslumbra por su claridad". Véase el voto particular de conformidad emitido por el Juez Asociado señor Colón Pérez,

pág. 3. De igual forma, es claro el derecho pautado en AMPR et al. v. Sist. Retiro Maestros V, supra, en donde establecimos diáfanamente que lo único que el legislador estaba impedido de alterar mediante ley era la cantidad de la pensión que un maestro tenía derecho a recibir. Incluso, ya habíamos clarificado que la pensión por viudez y los otros beneficios incluidos en la derogada ley, no pueden ser catalogados como derechos adquiridos. Véase, Trinidad Hernández et al. v. ELA et al., supra, pág. 839, esc. 2. Por esa razón, el legislador sí podía eliminarlos, tal y como lo hizo a través de la Ley Núm. 160-2013, supra. En virtud de lo anterior, la Sentencia se equivoca al concluir que el peticionario tiene razón en su primer argumento. **La pensión por viudez no puede considerarse un derecho adquirido del peticionario. Quien único ostentaba un derecho adquirido era su esposa, la señora González Ortiz, a su pensión.**

El segundo argumento del peticionario intenta establecer que la pensión por viudez es un beneficio que el legislador quiso conservar en la Ley Núm. 160-2013, supra. En este punto es importante recordar que el caso ante nuestra consideración es peculiar debido a que la señora González Ortiz reunía los requisitos para retirarse antes de entrar en vigor la Ley Núm. 160-2013, supra. Sin embargo, en lugar de retirarse en la ventana creada por el Art. 4.4(a) de la Ley Núm. 160-2013, supra, y así conservar el beneficio de pensión por viudez para el peticionario, la señora González Ortiz se mantuvo en el servicio. Por esto, al momento de su

retiro (24 de enero de 2018) únicamente conservó su derecho adquirido a la pensión. Como resultado de ello, su viudo no posee el beneficio de pensión por viudez.

Lamentablemente, la señora González Ortiz no se encontraba en el grupo de participantes pensionados del Sistema de Retiro a los cuales el capítulo 4 de la Ley Núm. 160-2013, supra, les conservó el beneficio de la pensión por viudez. No en vano, el propio estatuto establece que "los pagos por defunción que correspondan a un participante que se pensione a partir del 1ro de agosto de 2014, se determinarán conforme a lo establecido en el Capítulo 5 de esta Ley". Art. 4.8 (i) de la Ley Núm. 160-2013, supra. Vemos entonces que la Junta de Retiro actuó correctamente al concluir que lo que procedía en este caso era realizar el desembolso del balance en un pago global ($88,625.14) a los beneficiarios designados, tal y como lo dispone el Art. 5.11 de la Ley Núm. 160-2013, supra.

La conclusión de la Junta de Retiro y del Tribunal de Apelaciones no solo es correcta al amparo de los artículos previamente discutidos de la Ley Núm. 160-2013, supra. También es respaldada por la Exposición de Motivos de la Ley Núm. 160-2013, supra. Allí se estableció que "deben realizarse medidas necesarias y razonables para resolver la situación deficitaria del Sistema de Maestros, dentro de nuestro ordenamiento legal y constitucional". Exposición de Motivos de la Ley Núm. 160-2013 (2013 Leyes de Puerto Rico 2073). De esta manera, la ley buscaba:

(1) **evitar que el Sistema de Maestros se quede sin fondos para pagar las pensiones a nuestros retirados;**

(2) honrar los beneficios acumulados por los maestros retirados y por aquellos que continúan educando diariamente a nuestros niños y jóvenes;

(3) **reducir significativamente el impacto proyectado del déficit anual del Sistema en el Fondo General, lo que de no hacerse afectaría la prestación de servicios públicos esenciales a la ciudadanía;** y

(4) **evitar la catástrofe socio-económica y fiscal que supondría la degradación del crédito de Puerto Rico al nivel de "chatarra".** (Énfasis suplido). Véase, Exposición de Motivos de la Ley Núm. 160-2013 (2013 Leyes de Puerto Rico 2073).

La Exposición de Motivos también establece que "los beneficios acumulados por los maestros hasta el día de la vigencia de esta ley subsisten y se pagarán de acuerdo a lo establecido en la Ley 91 según ésta lee actualmente". Véase, Exposición de Motivos de la Ley Núm. 160-2013 (2013 Leyes de Puerto Rico 2073). Sin embargo, esta afirmación no tiene el alcance que se le pretende brindar en la Sentencia. Nótese que, en este caso, la señora González Ortiz nunca obtuvo el beneficio de pensión por viudez instituido en la derogada Ley Núm. 91-2004, supra, pues nunca se pensionó durante la vigencia de este estatuto. Una lectura armoniosa de la Exposición de Motivos y del texto de la Ley me lleva a concluir que lo que el legislador intentó preservar fue el beneficio de pensión por viudez acumulado por los maestros que se retiraron previo a la vigencia de la Ley o en el periodo de ventana que proveyó y no está dirigido a extender

estos beneficios a los maestros que se retiraran a partir del 1 de agosto del 2014. Por esa razón establece claramente que se preservan los beneficios acumulados por los maestros "hasta el día de la vigencia de esta ley".

### B.

En síntesis, el beneficio adicional de pensión por viudez no se reconoce como un derecho adquirido. **Lo único que se considera un derecho adquirido es la pensión del empleado, en este caso, la pensión que en vida recibía la señora González Ortiz**. Véase, Trinidad Hernández *et al*. v. ELA *et al*., supra. En virtud de lo anterior, coincido con el análisis realizado por el foro apelativo intermedio. La Ley Núm. 160-2013, supra, eliminó para los participantes que no se habían pensionado a la fecha del 31 de julio de 2014, el beneficio de la pensión por viudez para el cónyuge supérstite dispuesto en el Art. 35 de la Ley Núm. 91, supra.

Por lo tanto, luego de analizar el Artículo 4.8(c) en armonía con las demás disposiciones de la Ley Núm. 160-2013, supra, y su intención legislativa, no albergo duda de que esta disposición aplica exclusivamente a participantes que se retiraron previo a la vigencia de la Ley Núm. 160-2013, supra, o en la ventana creada por el Art. 4.4(a) de la Ley Núm. 160-2013, supra. Es decir, aplica a maestros y empleados que se habían retirado del servicio y recibían una pensión del sistema al momento de entrar en vigor las disposiciones de la Ley Núm. 160- 2013, supra. La señora González Ortiz no

era parte de este grupo de maestros al cual la Ley Núm. 160-2013, supra, le conservó el beneficio de pensión por viudez.

Incluso, si la Ley Núm. 160-2013, supra, hubiese preservado el beneficio de la pensión por viudez —según lo argumenta el peticionario y según lo confirma la Sentencia— no podemos pasar por alto que el fin último de la Ley Núm. 160-2013, supra, fue evitar que el Sistema de Retiro se quedara sin dinero. La creación de esta Ley fue el resultado del déficit actuarial y la excesiva concesión de beneficios que puso en peligro el pago de la pensión de los maestros. Exposición de Motivos de la Ley Núm. 160-2013, supra. Lo anterior influyó significativamente en la Confirmación de un Plan de Ajuste de la Deuda en el caso In re Commonwealth of Puerto Rico, Case. No. 17BK3283-LTS.

Asimismo, el Plan Fiscal de 2024 para Puerto Rico establece en su sección 1.3 titulada "Otros logros" que "[l]a seguridad del retiro de los servidores públicos queda protegida. Históricamente, las pensiones del Gobierno no contaban con suficiente financiamiento, asunto que ponía en riesgo la capacidad de realizar pagos de pensión a los presentes y futuros retirados." Véase, Plan Fiscal de 2024 para Puerto Rico, pág. 23. El Plan Fiscal menciona como una de las medidas para lograr la protección de las pensiones el "[c]ongelamiento de la acumulación de beneficios definidos para los Sistemas de Retiro para Maestros y la Judicatura (SRM y SRJ, respectivamente)". Íd. pág. 24.

La Sentencia que hoy se emite, contraviene el Plan Fiscal para Puerto Rico y se une a la indisciplina fiscal que nos llevó a la actual crisis económica. De esta forma, la pretensión de la Sentencia atenta contra una de las medidas que ha tomado la Junta de Supervisión Fiscal para proteger las pensiones y provee una doble compensación al viudo de una participante que no se acogió al retiro en la ventana establecida en la ley. De esta forma, le otorga tanto la liquidación del balance según la designación de beneficiarios como la pensión por viudez. Las particularidades de esta ley nos exigían leer cada artículo de manera integral para realizar cualquier análisis y encontrar soluciones a las controversias como las que se nos plantean en este caso. Interpretar cada artículo de manera aislada crea el contrasentido que propone la Sentencia que emite el Tribunal.

**La Junta de Retiro ya desembolsó $88,625.14 para el señor Jusino Rodríguez y las otras personas en el plan de desembolso.** Por tanto, la pretensión del señor Jusino Rodríguez de que sumemos al beneficio que ya recibió otros $89,000 en pensiones por viudez de forma retroactiva y se le continúen pagando $1,249 mensuales de manera vitalicia a una persona que nunca fue parte del Sistema de Retiro, resulta contraria tanto al texto de la Ley Núm. 160-2013, supra, como a su propósito y pone en riesgo las pensiones de los maestros al ordenar pagos no contemplados en el Plan Fiscal.

IV

Por los fundamentos antes expuestos, disiento respetuosamente del resultado propuesto en esta Sentencia. Una lectura integral de todos los artículos de la Ley Núm. 160-2013, supra, su intención legislativa y el derecho vigente demuestran que, debido a que la señora González Ortiz se retiró luego de la vigencia del estatuto, su cónyuge supérstite no tiene derecho al beneficio de pensión por viudez. En virtud de lo anterior, hubiese confirmado el proceder de la Junta de Retiro según ratificado por la Sentencia del Tribunal de Apelaciones.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado