Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **THALIA S. RIVERA**<br><br>Parte recurrida<br><br><br>v.<br><br><br>**MUNICIPIO DE SAN JUAN**<br><br>Parte recurrente | TA2025RA00175 | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Comisión Apelativa de Servicio Público<br><br>Caso Núm.<br>**2015-11-430**<br><br>Sobre:<br><br>**Retención** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 10 de noviembre de 2025.

Comparece ante nos, el Municipio de San Juan, en adelante, MSJ o recurrente, y nos solicita que revisemos la "*Resolución*" emitida por la Comisión Apelativa del Servicio Público, en adelante, CASP, notificada el 10 de julio de 2025. En su dictamen, la CASP declaró "*Ha Lugar*" la "*Apelación*" presentada por Thalia S. Rivera, en adelante Sra. Rivera o recurrida, y, en consecuencia, ordenó la restitución de esta última en su puesto, luego de dejar sin efecto la medida disciplinaria de destitución para sustituirla por una suspensión de empleo y sueldo.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

### I.

La Sra. Rivera comenzó a laborar como maestra de nivel Pre-Escolar para el MSJ en el año 2002.[1] Para el momento de los hechos

---

[1] Apéndice del recurso, Anejo 1, pág. 3. El recurrente sometió el apéndice de su recurso mediante una moción informativa fechada el 19 de agosto de 2025, de manera que estaremos haciendo alusión a los anejos allí presentados.

que originaron el pleito que nos ocupa, la Sra. Rivera ocupaba el puesto de Maestra Pre-Escolar en el Salón I del Centro Head Start Hoare, en adelante CHSH.[2] En dicho salón, la recurrida tenía a su cargo una matrícula de cuatro (4) estudiantes con autismo, por lo que disponía de dos (2) asistentes, las señoras Ruth Rosario y Stephanie González Cruz.[3]

El 7 de noviembre de 2014, debido a una presunta queja presentada por los padres de uno de los estudiantes, se realizó una observación grupal en el salón a cargo de la recurrida. Esta observación se llevó a cabo por Elizabeth López, Coordinadora Educativa del CHSH, junto a Maribel Pérez y Lorna Fernández, psicóloga clínica y terapista ocupacional, respectivamente[4]. A base del resultado de dicha intervención, dichas funcionarias suscribieron un informe sobre sus hallazgos, los cuales imputaban, en esencia, *un trato hostil, descuidado e inadecuado* de la Sra. Rivera hacia sus estudiantes[5].

A estos efectos, el 13 de noviembre de 2014, el MSJ le cursó una carta a la Sra. Rivera, mediante la cual le notificó que sería suspendida sumariamente mientras se conducía una investigación sobre maltrato psicológico e institucional por los eventos del 7 de noviembre de 2014.[6] Así las cosas, el 15 de diciembre de 2014, la trabajadora social a cargo de la investigación rindió un informe sobre maltrato institucional, en la que concluyó que la conducta imputada a la recurrida fue confirmada como maltrato y negligencia institucional.[7] En este, recomendó que se evaluara la acción de incumplimiento de las faltas señaladas conforme al Reglamento de

---

[2] Apéndice del recurso, Anejo 1, pág. 3.
[3] *Íd.*
[4] *Íd.*, Anejo 3.
[5] *Íd.*, Anejo 3.
[6] *Íd.*, Anejo 4.
[7] *Íd.*, Anejo 5.

Conducta de Empleados del MSJ, y que se aplicaran las medidas disciplinarias correspondientes.

Consecuentemente, el 26 de enero de 2015, el recurrente cursó una misiva a la Sra. Rivera en la que le notificó el resultado de la antedicha investigación, por la cual procedió a informarle la intención de destitución de su puesto, y a imputarle cargos por la infracción de las siguientes normas de conducta, según contenidas en el *"Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan"*:

Norma de Conducta Prohibida Número 1 (a):
"Realizar el trabajo en forma negligente o descuidada, conforme a los deberes y responsabilidades del empleado o funcionario".

Norma de Conducta Prohibida Número 20:
"Cometer una agresión o intento de agresión y/o pelear en el trabajo."

Norma de Conducta Prohibida Número 49:
"Poner en peligro la vida y seguridad de otros empleados o personas de forma negligente o deliberada".

Norma de Conducta Prohibida Número 56:
"En caso de cualquier otra conducta impropia o en detrimento de los mejores intereses del Municipio, se aplicarán medidas disciplinarias de acuerdo a su importancia y gravedad, aún cuando la infracción no haya sido especificada en esta Tabla de Normas de Conducta y Medidas Disciplinarias".[8]

Luego del proceso administrativo informal, el MSJ le notificó a la Sra. Rivera del resultado mediante una carta fechada el 15 de octubre de 2015.[9] En la misma, el recurrente concluyó que la recurrida no logró rebatir los cargos imputados de negligencia y maltrato institucional, por lo que procedió a notificarle su decisión de *destituirla* de su puesto de Maestra Pre-Escolar de manera

---

[8] Apéndice del recurso, Anejo 6.
[9] *Íd.*, Anejo 7.

inmediata, a pesar de que la Oficial Examinadora recomendó la suspensión de empleo y sueldo como medida disciplinaria[10].

En desacuerdo con la decisión del MSJ, el 16 de noviembre de 2015, la Sra. Rivera procedió a presentar una "*Apelación*" ante la CASP.[11] En su escrito ante la agencia, adujo que la prueba presentada por el MSJ no sustentaba ni corroboraba las imputaciones en su contra de manera alguna. Además, arguyó que la destitución no representaba la sanción disciplinaria adecuada, pues el MSJ ignoró la recomendación de suspensión de la Oficial Examinadora que presidió la vista informal, así como ciertos criterios atenuantes a su favor que presuntamente justificaban la disciplina progresiva. Por ello, solicitó ser restituida a su puesto laboral.

Por su parte, el 16 de enero de 2016, el MSJ presentó su correspondiente contestación a la apelación de la recurrida.[12] La recurrente sostuvo que el expediente contiene suficiente evidencia para sostener las imputaciones de maltrato psicológico e institucional contra los menores bajo su cargo, los cuales requerían un grado mayor de cuidado y atención debido a su condición. Adujo, también, que la gravedad de los actos y omisiones de la Sra. Rivera justificaba la imposición de la medida disciplinaria más severa. Por lo tanto, arguyó que la destitución no viola el principio de mérito, pues dicha medida disciplinaria fue adecuada y proporcional.

Finalmente, el 10 de julio de 2025, la CASP emitió una "*Resolución*". En su dictamen, la agencia hizo unas conclusiones de hechos y de derecho, y concluyó que el MSJ logró probar solamente la infracción de una (1) de las cuatro (4) normas de conductas imputadas a la Sra. Rivera, por lo que, siendo la primera infracción

---

[10] Apéndice del recurso, Anejo 7, pág. 4.
[11] *Íd.*, Anejo 8.
[12] *Íd.*, Anejo 9.

durante su carrera como maestra, procedía la aplicación progresiva de las medidas disciplinarias.[13] De esta manera, determinó que correspondía la sanción menos severa de *suspensión de empleo y sueldo*. Por lo tanto, la CASP declaró "*Ha Lugar*" la "*Apelación*" de la recurrida y, en consecuencia, dejó sin efecto la medida disciplinaria de destitución, y la sustituyó por una suspensión de empleo y sueldo por cincuenta (50) días. Además, ordenó la restitución de la Sra. Rivera en su puesto de Maestra Pre-Escolar, así como el pago de los salarios y beneficios marginales dejados de percibir durante la pendencia de su destitución.

Inconforme con la decisión de la CASP, el MSJ presentó una "*Reconsideración*" ante dicha agencia el 30 de julio de 2025,[14] la cual fue declarada "*No Ha Lugar*" mediante una "*Resolución*" fechada el 4 de agosto de 2025.[15] Por ello, el 19 de agosto de 2025, el recurrente compareció ante esta Curia mediante un recurso de "*Revisión Administrativa*", en el cual señalaron los siguientes errores:

> **PRIMER ERROR**: ERRÓ LA CASP EN DECLARAR HA LUGAR LA APELACIÓN DE LA RECURRIDA.
>
> **SEGUNDO ERROR**: ERRÓ LA CASP AL CONCLUIR QUE LOS HECHOS PROBADOS POR EL MUNICIPIO DE SAN JUAN NO CONSTITUYEN AGRESIÓN NI PUSIERON EN PELIGRO LA VIDA DE LOS MENORES.
>
> **TERCER ERROR**: ERRÓ LA CASP EN LA APRECIACIÓN DE LA PRUEBA TESTIFICAL RENDIDA POR LOS TESTIGOS DEL MUNICIPIO DE SAN JUAN, AL MINIMIZAR TESTIMONIOS QUE EVIDENCIARON EL USO DE FUERZA FÍSICA Y NEGLIGENCIA GRAVE.
>
> **CUARTO ERROR**: ERRÓ LA CASP AL IGNORAR LOS TESTIMONIOS SOBRE EL PELIGRO INHERENTE EN SUJETAR CON FUERZA LA CABEZA DE UNA MENOR PARA OBLIGARLA A COMER, ASÍ COMO EL RIESGO DE ASFIXIA AL TAPAR COMPLETAMENTE A LOS MENORES CON

---

[13] Apéndice del recurso, Anejo 1.
[14] *Íd.*, Anejo 10
[15] *Íd.*, Anejo 2.

FRAZADAS MIENTRAS TENÍAN CHALECOS DE PESO COLOCADOS.

El mismo día, el recurrente presentó una moción mediante la cual anejó el apéndice correspondiente a su recurso. El 21 de agosto de 2025, el MSJ presentó otra moción, en la cual solicitó autorización para presentar la transcripción de la prueba oral estipulada de las vistas administrativas ante la CASP. Mediante "*Resolución*" del 22 de agosto de 2025 concedimos lo solicitado por el recurrente, con las respectivas indicaciones para exponer las objeciones, el alegato suplementario y la oposición al alegato suplementario.

El 28 de agosto de 2025, el recurrente sometió ante nos la transcripción de la prueba oral, e informó que presentaría su alegato suplementario. Posteriormente, dicha parte presentó su respectivo alegato suplementario, fechado el 23 de septiembre de 2025. Así las cosas, el 16 de octubre de 2025, la Sra. Rivera presentó su "*Oposición a Revisión Administrativa y al Alegato Suplementario del Recurrente*".

Con el beneficio de los escritos presentados, de la transcripción de la prueba oral, y perfeccionado el recurso ante nos, procedemos a resolver.

**II.**

**A. Revisión Judicial de Decisiones Administrativas**

Sabido es que, en nuestro estado de derecho actual, las decisiones, órdenes y resoluciones finales de los organismos administrativos están sujetas a la revisión del Tribunal de Apelaciones. Artículo 4006 (c) de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4LPRA sec. 24; Ley Núm. 38-2017 Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, 3 LPRA secs. 9671 y 9672; Regla 56 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re*

*Aprob. Enmdas. Reglamemnto TA,* 2025 TSPR 42, pág. 75, 215 DPR ___ (2025); *Simpson, Passalaqua v. Quiros, Betances,* 214 DPR 370, 377 (2024); *Miranda Corrada v. DDEC, et al.,* 211 DPR 738, 745 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); *AAA v. UIA,* 200 DPR 903, 910 (2018). El objetivo principal de la revisión judicial consiste en auscultar si la agencia administrativa actuó de conformidad a las facultades que fueron conferidas por Ley. *Ruiz Matos v. Dept. Corrección,* 213 DPR 291, 296 (2023); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023); *Pérez López v. Depto. Corrección,* 208 DPR 656, 672 (2022).

De ordinario, estas revisiones proceden al adjudicarse finalmente todas las controversias en consideración de la agencia y al agotarse todos los remedios administrativos disponibles para un litigante. *Buxó Santiago v. ELA et als.,* 2024 TSPR 130, 215 DPR __ (2024); *Miranda Corrada v. DDEC, et al.,* supra, pág. 746; *Pérez López v. Dpto. Corrección,* supra, pág. 672; *Fonte Elizondo v. FR Conts.* 196 DPR 353, 358 (2016). Además, la facultad de cuestionar una determinación administrativa forma parte del debido proceso de ley, el cual es un derecho con rango constitucional. *ACT v. Prosol et als.,* 210 DPR 897, 908 (2022); *Asoc. Condomines v. Meadows Dev.,* 190 DPR 843, 847 (2014).

Empero, huelga decir que "la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo." *Hernández Feliciano v. Mun. Quebradillas,* supra, págs. 115-116; *Capó Cruz v. Jta. Planificación, et al.,* 204 DPR 581, 591 (2020). A tenor con ello, el foro apelativo debe hacer distinción entre los asuntos consistentes a la discreción o pericia de la agencia, y las controversias relacionadas a la interpretación estatutaria, en las cuales los tribunales son especialistas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 116; *OCS v. Point Guard Ins.,* 205 DPR 1005, 1028 (2020).

El foro judicial debe conceder deferencia a las decisiones de las agencias administrativas por razón de la experiencia y el conocimiento especializado que estas poseen sobre los asuntos que se les han delegado. *Katiria's Café Inc. v. Mun. Aut. San Juan,* 2025 TSPR 33, 215 DPR __ (2025); *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR __ (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Voilí Voilá Corp. B. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Hernández Feliciano v. Municipio de Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, págs. 88-89; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Cónsono con lo anterior, los dictámenes administrativos están revestidos de una presunción de legalidad y corrección, la cual subsiste, mientras que la parte que los impugna no produzca suficiente evidencia para derrotarla. *Katiria's Café Inc. v. Mun. Aut. San Juan,* supra; *Transp. Sonell v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs Bank,* supra; *Voilí Voilá Corp. v. Mun. Guaynabo,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, pág. 89; *Rolón Martínez v. Supte. Policía,* supra, pág. 35.

Sin embargo, nuestro más Alto Foro recientemente dispuso, acogiendo así la normativa que impera en el Foro Federal, que la deferencia administrativa debida *no se extiende a las determinaciones de derecho. Vázquez, et als. vs. DACo,* 2025 TSPR 56, 215 DPR ___ (2025). Es decir, la deferencia de los foros judiciales a las agencias administrativas continua vigente para las determinaciones de hecho que estas realicen. Sin embargo, conforme al cumplimiento de las facultades revisoras sobre el derecho, estamos instruidos por nuestro Tribunal Supremo a revisar, sin los amarres de la deferencia, las determinaciones de derecho de las agencias administrativas. *Id.* Por su parte, la LPAUG,

supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal".

Por todo lo cual, el precitado caso reza de la siguiente manera:

[l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, *será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.*

*Vázquez, et als. vs. DACo,* supra.
(Énfasis suplido).

Cuando una parte desee impugnar las determinaciones de hecho de una agencia que estén asentadas en la prueba oral que desfiló ante esta, nuestro Tribunal Supremo ha establecido que "es imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba". *Camacho Torres v. AA-FET*, 168 DPR 91, 92 (2006). Véase, además, *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 129 (2019).

Así, los tribunales, para lograr su encomienda, deberán evaluar los siguientes tres (3) aspectos: 1) si el remedio concedido fue el apropiado; 2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) si se sostienen las conclusiones de derecho realizadas por la agencia. *Katiria's Café Inc. v. Mun. Aut. San Juan,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115; *OEG* v. *Martínez Giraud,* supra, pág. 89; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.*, supra, pág. 591.

### B. Facultad de la CASP

La Comisión Apelativa del Servicio Público (CASP) fue creada mediante el Plan de Reorganización Núm. 2-2010, 3 LPRA Ap. XIII, en adelante, Plan de Reorganización, en el que se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público. La CASP es un organismo administrativo cuasi-judicial especializado en el que se atienden casos laborales, de administración de recursos humanos y querellas, tanto al amparo de la Ley de Relaciones del Trabajo del Servicio Público, 3 LPRA sec. 1451, *et seq.*, como la Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, 3 LPRA Ap. XIII, Art.4.

Entre las funciones conferidas a la CASP en su ley habilitadora, el Artículo 8 del Plan de Reorganización, supra, dispone que:

> La Comisión tendrá, entre otras, las siguientes facultades, funciones y deberes:
>
> [...]
>
> i) conceder los remedios que estime apropiados y emitir las órdenes que sean necesarias y convenientes conforme a las leyes aplicables. Esto incluye, entre otras, órdenes provisionales o permanentes de cesar y desistir; órdenes para la reposición de empleados suspendidos o destituidos, con o sin el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los cuales los empleados hubiesen tenido derecho durante el período de suspensión o destitución; órdenes imponiendo sanciones económicas o procesales a agencias, funcionarios o representantes legales por incumplimiento o dilación de los procedimientos; y órdenes imponiendo sanciones a agencias, organizaciones sindicales o representantes exclusivos, incluyendo la descertificación de estos últimos;
>
> [...]
>
> l) atenderá toda querella o apelación que se presente oportunamente y que concierna a su jurisdicción, para lo cual deberá interpretar, aplicar y hacer cumplir las

disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, conocida como la "Ley para la Administración de los Recursos Humanos en el Estado Libre Asociado de Puerto Rico y reglamentación vigente, en todo lo relativo a la administración de los recursos humanos y la relación obrero patronal;

[...]

3 LPRA Ap. XIII, Artículo 8.

Por tanto, la CASP es un ente adjudicativo creado con jurisdicción apelativa exclusiva para atender y adjudicar las apelaciones de los empleados públicos del Gobierno de Puerto Rico. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1053 (2013). El Artículo 13 del Plan de Reorganización, supra, establece las condiciones con las cuales una parte debe cumplir para acudir ante la CASP en apelación. El procedimiento para iniciar una querella o apelación por una parte adversamente afectada en aquellos casos contemplados bajo el Artículo 11 del Plan de Reorganización, supra, establece que la parte afectada presentará un escrito de apelación a la CASP dentro del término jurisdiccional de treinta (30) días, contados a partir de la fecha en que se le notifica la acción o decisión.

Además, en su Artículo 12 el Plan de Reorganización, supra, establece que la CASP tendrá jurisdicción exclusiva sobre:

[L]as apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:

a) cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45-1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la "Ley de Municipios Autónomos", los

reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable;[16]

[...]

3 LPRA Ap. XIII, Artículo 12.

### C. Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan

Con el propósito de salvaguardar el buen orden y la sana administración pública, la derogada *Ley de Municipios Autónomos*, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 LPRA sec. 4001 *et seq.*,[17] autorizaba a los municipios a imponer la acción disciplinaria correspondiente cuando sus empleados desplegasen un comportamiento que no se ajustara a las normas de conducta establecidas. Ley Núm. 81-1991, supra, sec. 4562. En el ejercicio de esta facultad, los municipios podían considerar medidas disciplinarias como amonestaciones verbales, reprimendas escritas, suspensiones de empleo y sueldo, y destituciones. *Íd.*

De conformidad con las disposiciones de la precitada Ley, el Municipio Autónomo de San Juan elaboró y adoptó un nuevo "*Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan*", en adelante Reglamento de Conducta, mediante la Sección Séptima (7ma) de la Ordenanza Núm. 30, Serie 2006-2007 de 7 de mayo de 2007. Conforme a dicho reglamento, el Municipio tiene la responsabilidad de imponer de manera uniforme, objetiva y sin perjuicio aquellas acciones correctivas que estime necesarias para mantener el orden y la disciplina en el ámbito laboral municipal. Ahora bien, tales medidas deben aplicarse de modo que

---

[16] La Ley Núm. 24-2023 enmendó este Artículo del Plan de Reorganización a los fines de sustituir, entre otras cosas, la referencia a la Ley Núm. 81-1991, la cual fue derogada por la Ley Núm. 107-2020, conocida como *Código Municipal de Puerto Rico*, 21 LPRA secs. 7001, *et seq.*

[17] Como adelantáramos, la Ley Núm. 107-2020, derogó la Ley Núm. 81-1991. No obstante, los hechos en este caso ocurrieron durante la vigencia de la pieza legislativa derogada.

guarden proporción con la gravedad de la conducta incurrida, y tomando en consideración otras circunstancias atenuantes o agravantes, si alguna, tales como el historial del empleado, su desempeño y la conducta incurrida. Artículo 4.05 del Reglamento de Conducta.

Al igual que la Ley Núm. 81-1991, el Reglamento de Conducta incorpora la reprimenda escrita, la suspensión de empleo y sueldo y la destitución como medidas disciplinarias a ser aplicadas por la Autoridad Nominadora cuando un empleado municipal incurra en conducta que infrinja los deberes y obligaciones que le han sido encomendados en el propio reglamento. Artículo 4.09 del Reglamento de Conducta. No obstante, la medida disciplinaria aplicada debe encontrarse sustentada por prueba documental o testifical, y siempre guardando proporción con la falta imputada. Artículo 4.14(F).

De esta manera, el antedicho reglamento explícitamente establece aquellas normas de conductas prohibidas junto las correspondientes medidas disciplinarias aplicables, tomando en consideración la recurrencia o gravedad de la conducta incurrida. En lo relevante al presente recurso, el Reglamento de Conducta dispone lo siguiente:

Normas de Conducta Prohibidas:

1. Insubordinación, tal como:
a. Realizar el trabajo en forma negligente o descuidada, conforme a los deberes y responsabilidades del empleado o funcionario.
[…]
20. Cometer una agresión o intento de agresión y/o pelear en el trabajo.
[…]
49. Poner en peligro la vida y seguridad de otros empleados o personas de forma negligente o deliberada.
[…]
56. En caso de cualquier otra conducta impropia o en detrimento de los mejores intereses del Municipio, se

aplicarán medidas disciplinarias de acuerdo a su importancia y gravedad, aún cuando la infracción no haya sido especificada en esta Tabla de Normas de Conducta y Medidas Disciplinarias.

Reglamento de Conducta, Anejo B, págs. 1-2, 5-6.

La conducta prohibida enumerada en el inciso (1)(a) está sujeta a las siguientes medidas disciplinarias: cuando se comete por primera vez, procede una suspensión de empleo y sueldo por diez (10) días laborables. Sin embargo, cuando se comete por una segunda ocasión, procede la destitución del empleado. Por su parte, tanto la conducta prohibida enumerada en el inciso veinte (20) como en el inciso cuarenta y nueve (49) están sujetas a la medida disciplinaria de la destitución cuando se comete por primera vez. Por último, la norma de conducta enumerada en el inciso cincuenta y seis (56) constituye una cláusula general, la cual faculta al Municipio a aplicar aquella medida disciplinaria proporcional a la importancia y gravedad de aquella conducta imputada y no especificada en dicho reglamento. Reglamento de Conducta, Anejo B, supra.

**III.**

El MSJ recurre ante nos mediante el recurso de marras, y nos solicita que revoquemos la "*Resolución*" de la CASP, mediante la cual determinó que no procedía destituir a la Sra. Rivera de su puesto de Maestra Pre-Escolar, sino que procedía la medida disciplinaria de suspensión de empleo y sueldo por un total de cincuenta (50) días, por lo cual ordenó así la restitución de esta en su puesto de Maestra Pre-Escolar.

Una lectura integral de los señalamientos de error del recurrente refleja que estos se reducen, principalmente, a impugnar la apreciación de la prueba testifical y documental presentada por el MSJ por parte del foro administrativo recurrido para concluir que

la conducta desplegada por la recurrida, al intervenir con sus estudiantes, no era constitutiva de agresión o que pusiera en riesgo la vida de estos.

El argumento principal del recurrente es que, a pesar de haber realizado varias determinaciones de hechos dirigidas a probar el desempeño negligente e inapropiado de la Sra. Rivera en sus deberes como Maestra Pre-Escolar, la CASP minimizó u omitió calificar tal conducta como actos de agresión física, castigo corporal, tratos degradantes o intervenciones peligrosas que pusieron en riesgo la seguridad y bienestar de los menores a su cargo. *No le asiste la razón.*

Surge del expediente ante nuestra consideración que la CASP, luego de evaluar la prueba documental y testifical que obraba en el expediente, formuló un total de treinta (30) determinaciones de hechos. Entre estos, estableció los siguientes actos realizados por la Sra. Rivera el día 7 de noviembre de 2014 en el CHSH, pertinentes a las faltas imputadas por el MSJ:

11. De la observación surgió que la PROMOVENTE se sentó detrás de la menor A. O. para que esta ingiriera los alimentos e intentó manipular a la menor para que agarrara la cuchara con la mano, pero esta se resistió.

12. La asistente Ruth Rosario le sujetó la cabeza a la menor A. O., mientras que la PROMOVENTE le sujetó la quijada para tratar de darle la comida con la cuchara, pero la menor continuó resistiéndose y comiendo con sus manos.

13. Culminada la rutina de alimentación, la PROMOVENTE no llevó a la menor A. O. a la rutina de higiene, consistente en el lavado de manos y dientes.

14. La PROMOVENTE le colocó a la menor A. O. un chaleco de peso que estaba disponible en el salón y procedió a acostarla en su catre.

15. La Terapista Ocupacional asignada a los niños del salón 1 no recomendó que se utilizara el chaleco de peso con la menor A. O., ni había una autorización por escrito de los padres para ello.

16. La Sra. Elizabeth López Santiago, Sra. Lorna Fernández y la Sra. Maribel Pérez Burgos observaron que la PROMOVENTE arropó todo el cuerpo de la menor A. O. y el menor S. B., incluyendo la cara.

17. La menor A. O. se levantó del catre y la asistente Ruth Rosario comentó que esta se había evacuado.

18. La PROMOVENTE esperó de diez (10) a quince (15) minutos para que la menor A. O. terminara de evacuar, porque conocía que esta se tardaba en hacerlo.

19. La PROMOVENTE tardó de diez (10) a quince (15) minutos en cambiar el pañal de la menor A. O., luego de verificar que esta había evacuado.

20. La PROMOVENTE cambió el pañal de la menor A. O., en el baño que está ubicado dentro del salón.

21. El menor S. B. estaba intranquilo y moviéndose, mientras estaba acostado, y la asistente Ruth Rosario le puso el pie derecho encima del menor; por lo que, la Sra. Elizabeth López Santiago entró al salón y le instruyó a esta que quitara el pie de encima del menor.

22. La PROMOVENTE no vio cuando la asistente Ruth Rosario colocó su pie encima del menor S. B., porque esto aconteció mientras se encontraba en el baño cambiando el pañal de la menor A. O., desde donde no tenía visibilidad hacía el resto del salón.

23. La PROMOVENTE se enteró de que la asistente Ruth Rosario le puso su pie encima del menor S. B. cuando esta le informó que la Sra. Elizabeth López Santiago entró al salón para llamarle la atención.

24. La PROMOVENTE reprendió a la asistente Ruth Rosario por haber puesto su pie encima del menor S. B.

25. La Sra. Elizabeth López Santiago, Sra. Lorna Fernández y la Sra. Maribel Pérez Burgos observaron que la PROMOVENTE utilizó su celular en el salón en varias ocasiones.[18]

A base de estas determinaciones de hechos, el foro administrativo recurrido concluyó que la Sra. Rivera fue negligente y descuidada en el desempeño de sus deberes, pero no incurrió en conducta constitutiva de agresión o que pusiera en riesgo la vida de

---

[18] Apéndice del Recurso, Anejo 1, págs. 4-5.

los menores a su cargo. Por lo tanto, determinó que esta incurrió en la norma de conducta prohibida número 1(a) del Reglamento de Conducta, *la cual establece la suspensión de empleo y sueldo como medida disciplinaria progresiva*, mas no las otras tres (3) que le fueron imputadas, las cuales justificaban la destitución en una primera infracción. *Coincidimos con las expresiones de la CASP.*

Conforme al derecho previamente esbozado, este Tribunal se encuentra en idéntica posición para examinar toda la prueba documental y testifical desfilada ante el foro recurrido, y las cuales fundamentan las determinaciones de hechos impugnadas por el recurrente.

En el recurso que nos ocupa, no se encuentra en disputa la infracción de la norma de conducta prohibida número 1(a). De hecho, a base de las determinaciones de hechos aquí esbozadas, y de la prueba de las cuales estas se derivan, la CASP concluyó, sin lugar a dudas, que la Sra. Rivera fue negligente y descuidada durante el periodo en que fue observada por las funcionarias del CHSH.

Aún más determinante, la recurrida nunca negó que cada una de dichas determinaciones evidenciaran el desempeño negligente de sus deberes.[19] No obstante, admitida la violación a la conducta proscrita por la norma en cuestión, arguyó que, por tratarse de una primera ofensa, sin que hubiese sido objeto de acciones disciplinarias durante su tiempo como maestra en el MSJ, la medida disciplinaria correspondiente era *una suspensión de empleo y sueldo.*[20] Sobre este particular, el recurrente nada menciona en su recurso, salvo la reproducción de la medida disciplinaria correspondiente a tal norma.[21]

---

[19] Recurso de la recurrida, págs. 6, 10.
[20] *Íd.*, págs. 19-21.
[21] Recurso del recurrente, pág. 17.

Pudimos constatar que la prueba desfilada ante la CASP confirmó que la Sra. Rivera nunca fue, en efecto, objeto de acción disciplinaria durante los doce (12) años que laboró para el MSJ. Como cuestión de hecho, la propia testigo del recurrente, la Sra. Elizabeth López Santiago, afirmó que conocía a la recurrida desde hace años, que había sido su supervisora anteriormente, y que esta era excelente en su ejecutoria como maestra.[22]

Según discutimos previamente, el Reglamento de Conducta explícitamente dispone que el MSJ debe aplicar las medidas disciplinarias tomando en consideración, entre otros factores, la recurrencia de la conducta incurrida. De igual manera, nuestro ordenamiento favorece la imposición de medidas proporcionales a la falta, y menos severas que la destitución cuando se trata de una primera infracción. *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 543 (1979). En vista de que la recurrida no había incurrido previamente en conducta constitutiva de insubordinación en su modalidad de *desempeño negligente de sus deberes*, no podemos sino coincidir con la determinación de la CASP en cuanto a que procedía la imposición de la medida disciplinaria de suspensión de empleo y sueldo por ser su primera infracción a la norma de conducta prohibida numero 1(a).

Ahora bien, las controversias presentadas por el MSJ en su recurso versan, esencialmente, sobre la determinación de la CASP en cuanto a que la Sra. Rivera no incurrió en actos que violentaran las normas de conductas prohibidas enumeradas en los incisos veinte (20) y cuarenta y nueve (49) del Anejo B del Reglamento de Conducta, a saber: "Cometer una agresión o intento de agresión y/o pelear en el trabajo", y "[p]oner en peligro la vida y seguridad de

---

[22] Transcripción de la prueba oral del 2 de junio de 2023, págs. 110-111. Véase, además, Transcripción de la prueba oral del 13 de octubre de 2023, pág. 11.

otros empleados o personas de forma negligente o deliberada", respectivamente.

Sobre la norma de conducta prohibida número veinte (20), el MSJ sostiene que la CASP ignoró o no evaluó correctamente el testimonio de la Coordinadora Educativa, Elizabeth López Santiago, y de la psicóloga clínica, Maribel López Burgos. Arguye el recurrente que, ambos testimonios establecieron de manera directa que la Sra. Rivera sujetó con fuerza excesiva la cabeza de una de sus estudiantes, la menor A. O., para obligarla a comer, provocando que esta última llorara, por lo que propició un castigo físico inaceptable.

En este caso, fue un hecho probado el que la maestra recurrida utilizó una técnica inapropiada para tratar de alimentar a la menor A.O., quien tenía una condición de autismo no verbal. Esto pues, era deber de la maestra recurrida modelarle la forma de ingerir alimentos, en vez de la técnica utilizada.[23] Resulta cierto que los testimonios de la Sra. Elizabeth López Santiago y de la Sra. Maribel Pérez Burgos reiteradamente pretenden establecer que la Sra. Rivera y su asistente utilizaron fuerza para sostener la cabeza de la menor en cuestión para intentar alimentarla en el periodo de almuerzo.

Sin embargo, nótese que, contrario a lo planteado por el MSJ, una de estas testigos afirmó que, aunque percibió fuerza al sostener la cabeza, nunca supo si la menor se quejó de dolor, y tampoco vio que se le obligara a ingerir alimentos.[24] Aún más determinante, dicha testigo admitió que percibió tal acto como uno inapropiado, pero que nunca lo percibió como un tipo de agresión contra la menor.[25] Por otro lado, la otra testigo se limitó a reiterar que tal técnica fue inadecuada, pues lo correcto hubiese sido modelarle la forma de ingerir alimentos.[26]

---

[23] Transcripción de la prueba oral del 2 de junio de 2023, pág. 261.
[24] *Íd.*, págs. 101, 108.
[25] *Íd.*, pág. 161.
[26] *Íd.*, pág. 193. Sin embargo, la madre de la menor A.O. testificó que su hija no comía sola, por lo que las maestras tenían que presentarle la comida, tal como

Por otro lado, en cuanto a la norma de conducta prohibida número 49, el MSJ reitera e intenta exacerbar los hechos probados relacionados a lo que ocurrió durante la rutina de descanso de los menores A.O y S.B. Aduce, en primer orden, que la Sra. Rivera infligió un castigo corporal al ponerle un chaleco de peso a la menor A.O. sin la debida autorización al momento de acostarla, poniendo en riesgo su integridad corporal y emocional. En segundo orden, arguye que la recurrida también puso en riesgo la vida del menor S.B. al permitir que una de sus asistentes colocara un pie sobre el cuerpo de este mientras dormía. Por último, y con más fervor, alega el recurrente que la maestra recurrida puso a ambos menores en riesgo de asfixia al arroparlos hasta cubrirles el rostro.

Nuevamente, el MSJ nos plantea que la CASP minimizó u obvió los testimonios de sus testigos sobre estos asuntos, pues entiende que estos establecieron de manera patente el peligro palpable que sufrieron los menores A.O. y S.B. durante los actos reseñados. Arguye que tanto el uso del chaleco como la colocación del pie sobre el cuerpo del menor constituían castigos corporales y emocionales, aunque no produjeran lesiones visibles. *Sus argumentos no nos persuaden.*

Al remitirnos a los testimonios propuestos por el recurrente, resulta que las testigos en todo momento se limitaron a calificar tales actos como inadecuados, pues las maestras debían tener a los menores a la vista en todo momento.[27] De igual manera, aunque una de las testigos manifestó que el incidente con las frisas acarreaba un presunto riesgo de asfixia bajo su criterio,[28] la realidad es que las funcionarias a cargo de la investigación grupal nunca

---

hizo la maestra recurrida, para ver si esta lograba comer. Véase, Transcripción de la prueba oral del 2 de junio de 2023, pág. 287.
[27] Transcripción de la prueba oral del 2 de junio de 2023, págs. 59, 215.
[28] *Íd.*, pág. 204.

intervinieron para detener el uso del chaleco ni para destapar a los niños tan pronto fueron cubiertos.[29]

Como cuestión de umbral, la Sra. Maribel Pérez Burgos, admitió que, durante la observación grupal, nunca se le ocurrió que los menores estuviesen en peligro de muerte cuando les cubrieron los rostros con las frisas.[30] Igualmente, afirmó que la Sra. Rivera nunca exhibió conducta que pusiera en riesgo de vida o muerte a la menor A.O.[31] De hecho, la única vez que las funcionarias estimaron necesaria una intervención fue cuando la asistente de la maestra recurrida puso el pie encima del menor S.B,[32] lo cual fue demostrado que ocurrió en ausencia de la Sra. Rivera.

Evaluada la prueba testifical, tal cual nos señala el recurrente, opinamos que la Sra. Rivera no incurrió en las faltas señaladas al amparo de las normas de conductas prohibidas número veinte (20) y cuarenta y nueve (49). Por consiguiente, somos del criterio de que la CASP no erró al concluir que la Sra. Rivera no infringió dichas normas, pues fundamentó su determinación luego de justipreciar la totalidad de la prueba testifical presentada para determinar que la maestra recurrida no puso en riesgo la vida de los estudiantes a su cargo, y mucho menos los agredió o intentó agredirlos.[33] En la medida que no se infringieron dichas normas, no se justificaba la destitución como la primera sanción disciplinaria.

Huelga puntualizar que el desempeño negligente de la Sra. Rivera sí nos resulta propiamente sancionable, en la medida que su trabajo involucraba menores que requieren un trato de cuidado y atención distinto al resto de la población infantil. Por tal razón,

---

[29] Transcripción de la prueba oral del 2 de junio de 2023, pág. 217.
[30] *Íd.*, pág. 222.
[31] *Íd.*, pág. 200.
[32] *Íd.*, págs. 63-64, 215.
[33] En cuanto a la norma de conducta prohibida número 56, coincidimos con las conclusiones de la CASP, en cuanto a que la misma no es aplicable al caso de marras, pues las actuaciones imputadas están contenidas en las otras normas de conductas previamente discutidas.

justificamos el que la CASP aumentara la cantidad de días de suspensión que dispone el Reglamento de Conducta del MSJ.

En vista de todo lo anterior, y examinado cuidadosamente el expediente en su totalidad, no observamos que el foro administrativo recurrido haya incurrido en abuso de discreción o haya actuado arbitraria o caprichosamente al emitir su dictamen. Por consiguiente, concluimos que *los errores señalados por el MSJ no fueron cometidos,* por lo que no estamos en posición de interferir con las conclusiones de la CASP. Procede, pues, que le concedamos total deferencia a la determinación recurrida y que se confirme el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones