Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| EMMANUELLI ROJAS MORAZA Y OTROS<br><br>Recurrida<br><br>v.<br><br>MUNICIPIO DE CAROLINA<br><br>Recurrente | TA2025RA00284 | Revisión procedente de la Comisión Apelativa del Servicio Público<br><br>Caso núm.: 2003-06-1497<br><br>Sobre: Jornada de Trabajo y Asistencia |
| --- | --- | --- |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de marzo de 2026.

La Comisión Apelativa del Servicio Público ("CASP") declaró con lugar una reclamación de unos bomberos, empleados del Municipio Autónomo de Carolina (el "Municipio"), a los efectos de que se les compense, a tiempo y medio, su hora de almuerzo, pues, durante la misma, se les ha exigido estar disponible para trabajar si se suscitara una emergencia. Según se explica a continuación, concluimos que erró CASP, pues dichos bomberos, por la naturaleza de su trabajo, deben estar disponibles continuamente.

I.

El 27 de octubre de **2003**, los Sres. Abraham Castro Lassus, Abraham Dávila Pizarro, Adrián Rodríguez Vázquez, Diego Pol Martínez, Jesús M. Castro Cuadrado, Jesús N. Ortiz Del Valle, José A. Flores Salgado, José J. Rivera Colón, José Nieves Látimer, Juan Ramos De Jesús, Julio Márquez Angulo, Justiniano Pérez Salcedo, Kelvin Smith López, Melvin Medina Ramos, Melvin Monell, Pablo J. Figueroa Ramos, Pedro Soto Cotto y Wilfredo Meléndez Miranda (los "Querellantes", todos pertenecientes en ese entonces al Cuerpo de Bomberos del Municipio), presentaron una *Solicitud de Apelación* (la "Querella") ante la Comisión Apelativa del Servicio Público ("CASP").

En síntesis, alegaron que el Municipio no les permitía tomar una hora de almuerzo. Reclamaron el pago de la hora de almuerzo y que se establezca oficialmente el periodo de almuerzo.

El 5 de abril de 2005, el Municipio instó una *Contestación a la Apelación.* Aseveró que a los Querellantes sí se le proveía un periodo para tomar alimentos. Explicó que, por su naturaleza, el servicio que prestan los bomberos debe estar disponible las 24 horas del día, todos los días del año. Añadió que a los Querellantes se les permitía ingerir alimentos durante el turno de trabajo (de ocho horas en total), salir a comprar alimentos y **que se les pagaba el periodo de tiempo que utilizaban para adquirir y comer alimentos.**

Al cabo de los trámites procesales de rigor, en mayo de **2012**, casi nueve (9) años después de instada la *Solicitud de Apelación*, la CASP celebró la correspondiente vista administrativa. No obstante, el Oficial Examinador que presidió la vista cesó funciones en la CASP sin rendir su informe. Además, la grabación de la vista estaba incompleta.

En vista de lo anterior, siete años luego, la CASP celebró nuevamente la vista administrativa, ello durante los días 12, 13 y 14 de agosto y 27 de septiembre, todos del año **2019**.

El 19 de agosto de **2025**, casi 22 años luego de instada la Querella, y aproximadamente 6 años luego de celebrada la última vista administrativa, la Oficial Examinadora presentó el *Informe de la Oficial Examinadora* (el "Informe"). El 28 de agosto, la CASP notificó una *Resolución* en la que acogió en su totalidad el aludido *Informe.*

La Oficial Examinadora formuló las siguientes determinaciones de hechos:

1. El 29 de julio de 1996 en virtud de la Ordenanza Núm. 7, Serie 1996-97-1- se creó el Cuerpo de Bomberos Municipales.

2. Los Promoventes pertenecen o pertenecieron, al momento de los hechos, al Cuerpo de Bomberos Municipales del Municipio Autónomo de Carolina.

3. El Cuerpo de Bomberos Municipales inició funciones en el año 1997 y en los primeros meses, por no tener aún los equipos para ejercer la función de bomberos, los Promoventes tenían un horario de regular de 8:00 a 4:30 pm con un periodo de tomar alimentos, sin paga, de 12:00 medio día a 1:00 pm.

4. Una vez llegó el equipo para ejercer las funciones de bomberos a los Promoventes se le cambió el horario de trabajo a uno de turnos rotativos de 6:00 am a 2:00 pm, 2:00 pm a 10:00 pm y 10:00 pm a 6:00 am.

5. Los Promoventes dejaron de interrumpir su jornada para disfrutar el periodo de tomar alimentos, una vez se implementaron los turnos rotativos.

6. En los tumos de horario rotativo la jornada de trabajo de los Promoventes era de cuarenta (40) horas semanales y no tenían periodo específico para tomar alimentos.

7. Los Promoventes recibían un salario que les compensaba por las cuarenta (40) horas de trabajo semanal, es decir por las ocho (8) horas de trabajo diarias.

8. Los Promoventes tenían autorizado el ingerir alimentos durante sus turnos de trabajo. Si requerían salir a comprar los mismos tenían autorizado el uso del camión para esos fines.

9. El tiempo que los Promoventes utilizaban para ingerir alimentos se les pagaba toda vez que la ingesta de alimentos era durante horas laborables.

10. En el Municipio de Carolina no existe un reglamento de personal que sea exclusivo para los bomberos municipales. (Hecho estipulado por las partes.)

11. A los Promoventes les aplica el Reglamento de Personal para los Empleados de Carrera del Municipio de Carolina.

La Oficial Examinadora razonó que, aunque la práctica del Municipio en torno a la hora de almuerzo de los Querellantes era cónsona con la naturaleza de las funciones de estos, el Municipio estaba obligado a cumplir con su reglamentación de aplicación general en materia de recursos humanos. Por tanto, concluyó que procedía compensar a los Querellantes a razón de tiempo y medio por la hora para tomar alimentos. En la alternativa, recomendó que

se les permitiera disfrutar de tiempo compensatorio por el tiempo correspondiente a la hora de tomar alimentos. Cónsono con lo anterior, la CASP ordenó al Municipio satisfacer a los Querellantes el salario dejado de percibir o que se les permitiera disfrutar de tiempo compensatorio correspondiente a la hora del periodo para tomar alimentos, a partir del inicio de los turnos rotativos en el Cuerpo de Bomberos Municipal.

Inconforme, el 16 de septiembre, el Municipio presentó una *Moción de Reconsideración,* a la cual se opusieron los Querellantes.

Mediante una *Resolución* de 26 de septiembre, la CASP denegó la solicitud de reconsideración del Municipio.

En desacuerdo, el 14 de octubre, el Municipio interpuso el recurso de referencia; formuló los siguientes cuatro (4) señalamientos de error:

A. PRIMERO: Erró CASP al no tomar en cuenta la prueba que se desfiló, la cual fue objeto de sus determinaciones de hechos, en cuanto a la naturaleza del trabajo de los Bomberos y la realidad de que estos, no solo disfrutaron de su hora de ingerir alimentos conforme a la naturaleza de este, sino que se les pagó una jornada de ocho horas que incluye dicho periodo, además de disfrutar de otros privilegios y beneficios.

B. SEGUNDO: Erró CASP al pasar por alto el hecho de que el Reglamento de Personal para los Empleados de Carrera del Municipio de Carolina no es inconsistente (sic) con la forma y manera en que opera el Cuerpo de Bomberos en cuanto a los turnos rotativos y el tiempo para ingerir alimentos.

C. TERCERO: Erró CASP al condenar a la recurrente a pagar a los bomberos desde la fecha en que comenzaron los turnos rotativos lo cual, además de no ser conforme a derecho, constituye una carga irrazonable y onerosa para esta, quien no es responsable de que la resolución del presente caso haya demorado veintiocho años, y de que se hayan celebrado dos vistas en su fondo debido a que, por razones no imputables a la apelada, el récord celebrado en la primera vista en su fondo en el 2012 se extravió, se celebró otra vista en su fondo en el 2019 y no es hasta el 2025 que se emite la Resolución.

D. CUARTO: Erró CASP al determinar a base de los "punch reports" de solo cuatro de los recurridos, que estos habían trabajado todos los días en su hora de almuerzo, cuando de dichos informes no surge que tuvieran que atender emergencia alguna que

interrumpiera el disfrute de su ingesta de alimentos.

Una vez presentada la transcripción estipulada de la prueba oral, el Municipio presentó un alegato suplementario.

Por su parte, los Querellantes presentaron su alegato en oposición; resaltaron que, aunque tenían hora de almuerzo, en realidad "no disfrutaban de un relevo real de labores".  Ello a diferencia de los empleados municipales de otras dependencias, quienes podían "disponer libremente de la hora de tomar alimentos", y así tener un "relevo completo de trabajo".  Resolvemos.

## II.

En lo atinente al alcance de la revisión judicial de las determinaciones de las agencias administrativas, la Sección 4.5 de la Ley Núm. 38-2017 ("LPAU"), 3 LPRA sec. 9675, establece lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Así pues, la revisión judicial de una decisión administrativa se ciñe a analizar: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Katiria's Café, Inc. v. Mun. Aut. de San Juan*, 2025 TSPR 33 a la pág. 11, 215 DPR __ (2025), citando a *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012).  Por su parte, en cuanto a las conclusiones de derecho, los tribunales apelativos tienen la facultad de revisarlas en todos sus aspectos.  *Vázquez v. Consejo de Titulares*, 2025 TSPR 56

a la pág. 31, 215 DPR ___ (2025); Véase, además, Sec. 4.5 de la LPAU, *supra.*

La deferencia a la determinación de una agencia administrativa cede cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Jusino Rodríguez v. Junta de Retiro*, 2024 TSPR 138 a la pág. 7, 215 DPR __ (2024) (Citas omitidas).

Destacamos que la evidencia sustancial se define como la "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953). A su vez, se desprende de la sección precitada que el expediente administrativo constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la subsiguiente revisión judicial. Véase, además, Sección 3.18 de la LPAU, 3 LPRA sec. 9658; *Graciani Rodríguez*, 202 DPR a la pág. 128.

III.

Por su parte, la Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 *et seq.*, según enmendada, conocida como la Ley de Municipios Autónomos ("Ley 81")[1], establecía la facultad que tiene un alcalde para diseñar, formular y aplicar un sistema de administración de personal para los municipios. Artículo 3.009(m)

---

[1] Hacemos referencia a la Ley de Municipios Autónomos, Ley Núm. 81, *ante*, por estar vigente al momento de los hechos.

de la Ley 81, 21 LPRA sec. 4109. Conforme al Artículo 11.001 de la Ley 81, 21 LPRA sec. 4551, cada municipio establecería un sistema autónomo para la administración del personal municipal. Este sistema se debía regir por el principio del mérito sobre los fundamentos de equidad, justicia, eficiencia y productividad; además, debía ser cónsono con las guías que preparaba la entonces Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico. *Íd.* Además, la Ley 81 ordenaba la adopción de un reglamento uniforme de administración de personal que incorporara un Plan de Clasificación de Puestos y de Retribución Uniforme, un sistema de reclutamiento, selección y reglamentación sobre adiestramiento y sobre el área de retención y cesantías. *Íd*; *Rivera Santiago v. Mun. de Ceiba*, 170 DPR 893, 900-901 (2007).

Asimismo, en cuanto a la jornada de trabajo, el Artículo 11.022 de la Ley 81, 21 LPRA sec. 4571, establecía lo siguiente:

> El municipio administrará lo relativo al horario, a la jornada de trabajo y a la asistencia de los empleados conforme a la reglamentación que adopte. La jornada regular no excederá de ocho (8) horas diarias ni de cuarenta (40) horas semanales. Se concederá a todo empleado una hora para tomar alimentos durante su jornada regular diaria.
>
> Cuando los empleados presten servicios en exceso de su jornada de trabajo diario o semanal, en sus días de descanso, en cualquier día feriado o en cualquier día que se suspendan los servicios por ordenanza municipal, tendrán derecho a recibir licencia compensatoria a razón de tiempo y medio o pago en efectivo, según dispuesto en la Ley Federal de Normas Razonables del Trabajo. Se podrá exceptuar de esta disposición a los empleados que realicen funciones de naturaleza profesional, administrativa o ejecutiva.

Cónsono con lo anterior, el Municipio adoptó el Reglamento Interno de Jornada de Trabajo y Asistencia (el "Reglamento de Jornada"), aprobado el 27 de febrero de 1997, y el Reglamento para el Sistema de Administración de los Recursos Humanos (el "Reglamento de Recursos Humanos"), aprobado el 29 de septiembre de 1998.

En particular, el Artículo 3, Sección 3.1, del Reglamento de Jornada establece lo siguiente:

1- La jornada semanal regular de trabajo para los empleados del Municipio de Carolina no será menor de treinta y siete y media (37.5) horas, a la semana, ni mayor de 40, sobre la base de cinco (5) días laborables y dos (2) días de descanso.

2- **Aquellos servicios que requieran operar en forma continua serán cubiertos mediante un sistema de turnos rotativos. A estos empleados se les requerirá que trabajen indistintamente durante cualquiera de los siete (7) días de la semana cuarenta (40) horas semanales**. (Énfasis provisto).

Por su parte, el Artículo 14, Sección 14.1, del Reglamento de Recursos Humanos establece como sigue:

La jornada regular semanal para los empleados del Municipio de Carolina no excederá de cuarenta (40) horas, no será menos de treinta (30) horas, sobre la base de cinco (5) días laborables. [...] La jornada de trabajo regular diaria no excederá de ocho (8) horas. Se concederá a los empleados dos (2) días de descanso por cada jornada regular semanal de trabajo.

Sin embargo, por necesidades del servicio, se podrá establecer una jornada semanal regular, para todo o parte del personal del municipio, comenzando y terminando en cualquier día de la semana, siempre y cuando dicha jornada comprenda cinco (5) días laborables y dos (2) días de descanso.

De igual modo, la Sección 14.3 del mismo Artículo 14 del Reglamento de Recursos Humanos dispone lo siguiente:

Se concederá a todo empleado **una (1) hora para tomar alimento durante su jornada regular diaria**. Dicho periodo deberá comenzar a disfrutarse por el empleado no antes de concluida la tercera hora y media, ni después de terminada la quinta hora de trabajo consecutivo.

Cuando se requiera que el empleado preste servicios durante el periodo de tomar alimentos o parte de este por razón de una emergencia, o necesidad urgente del servicio, **se concederá tiempo compensatorio sencillo al empleado por el equivalente al tiempo no utilizado para ingerir alimento**. El empleado disfrutara la licencia compensatoria **el mismo día** en que se suprimió o redujo su periodo de tomar alimento.

**Si por alguna razón, el empleado no pudiera disfrutar el tiempo compensatorio trabajo en exceso de la jornada de trabajo en el mismo día, el Municipio vendrá obligado a compensarle a razón de**

**tiempo y medio por el tiempo trabajado en exceso de dicha jornada**.

[...] (Énfasis provisto).

Por otro lado, en cuanto a la acumulación de tiempo extra, la Sección 14.5 del Artículo 14 del Reglamento de Recursos Humanos establece:

> a. [...]
> b. Los empleados tendrán derecho a recibir licencia compensatoria [...] Si por necesidades del servicio esto no fuera posible, se podrá acumular dicha licencia hasta un máximo de doscientas cuarenta (240) horas a excepción de aquellos empleados que llevan a cabo actividades de seguridad pública, o de emergencia los cuales podrán acumular la licencia hasta un máximo de cuatrocientos ochenta (480) horas compensatorias.

Por su parte, en el ámbito estatal, la Sección 13.1 del Artículo 13 del Reglamento Núm. 4439 del 7 de mayo de 1991, Reglamento de Personal del Cuerpo de Bomberos de Puerto Rico (el "Reglamento de Bomberos Estatales"), preceptúa lo siguiente:

> 1. La jornada regular semanal para los empleados **no excederá de cuarenta (40) horas**, **ni será menor de treinta y siete y media (37 1/2) horas**, sobre la base de cinco (5) días laborables, salvo disposiciones en contrario de las leyes especiales. La jornada diaria **no excederá de ocho (8) horas**.  Se concederá a los empleados dos (2) días de descanso, por cada jornada regular semanal de trabajo.  (Énfasis suplido).

Asimismo, la Sección 13.2 del Artículo 13 del Reglamento de Bomberos Estatales dispone lo siguiente:

> 1. Se concederá a todo empleado una (1) hora para tomar alimento **durante su jornada regular diaria**. Dicho período deberá comenzar a disfrutarse por el empleado no antes de concluida la tercera hora y medio, ni después de terminar la quinta hora de trabajo consecutiva. (Énfasis nuestro).

IV.

Concluimos que cometió error de derecho la CASP al concluir que los Querellantes tenían derecho a disfrutar de una hora de almuerzo sin estar a la vez disponibles para atender una emergencia, so pena de que el Municipio tuviese que compensarles dicho período a razón de tiempo y medio.  Veamos.

La propia reglamentación municipal (Artículo 3, Sección 3.1, del Reglamento de Jornada) contempla y autoriza el sistema implantado por el Municipio en cuanto a los Querellantes, al disponer que podrá establecerse un sistema de turnos rotativos cuando los servicios tengan que "operar en forma continua". Por su parte, lo que la Sección 14.3 del Artículo 14 del Reglamento de Recursos Humanos requiere es que se le conceda una hora de almuerzo al empleado; no obstante, en el caso de los Querellantes, la forma de cumplir con este mandato es razonable, pues se les brindaba dicho período, si bien sujeto a ser interrumpido en caso de una emergencia, para luego reanudarse.

Surge claramente del récord que a los Querellantes sí se les permitía tomar una hora para ingerir alimentos durante sus turnos de trabajo. Por ejemplo, el Sr. Kevin G. Smith López, sargento de los bomberos municipales, admitió que, debido al tipo de trabajo que hacen, los bomberos usaban el camión oficial para salir todos al unísono a buscar alimentos.[2] Explicó que no pueden salir en sus autos, "como una secretaria o personal de oficina".[3] Por su parte, otro sargento, el Sr. José A. Flores Salgado, admitió que a los Querellantes siempre se les permitió ingerir alimentos; no obstante, no podían tomar una hora para "ir a hacer cualquier cosa" como otros empleados del Municipio.[4]

De hecho, a diferencia de otros empleados municipales, a quienes no se les compensa por su hora de almuerzo (pues la misma es "libre"), en el caso de los Querellantes, se les pagaba la hora de almuerzo, pues se les compensaba por la jornada completa de ocho (8) horas. Entiéndase, tan pronto comenzaron los turnos rotativos, el Municipio les pagó a los Querellantes la hora de almuerzo debido

---

[2] Transcripción de la prueba oral (TPO), Tomo II, pág. 90, líneas 20-23; pág. 91, líneas 8-13; pág. 100, líneas 11-14; pág. 102, líneas 9-12.
[3] TPO, Tomo II, pág. 91, líneas 12-13.
[4] TPO, Tomo III, pág. 36, líneas 2-6.

a la naturaleza de las funciones de seguridad y rescate que estos asumieron como bomberos.   Es decir, mientras que a otros empleados se les hacía ponchar salida y entrada para poder tomar una hora de almuerzo, y trabajaban (y se les pagaba por) un total de 7.5 horas diarias (sin incluir la hora de almuerzo), a los Querellantes se les pagaba un turno completo de ocho (8) horas diarias, incluido el periodo o los periodos de tomar alimentos.[5]

Adviértase que el disfrute de la hora de almuerzo de la manera pretendida por los Querellantes, es decir, "de forma libre y sin ataduras", es incompatible con las funciones que realizan.  Así lo reconoció la propia CASP al establecer que "las razones para organizar la jornada de trabajo de los bomberos en turnos rotativos de ocho (8) horas y que a éstos no se les conceda un periodo de una hora sin paga para interrumpir la jornada de trabajo para disfrutar un periodo de tomar alimentos son definitivamente cónsonas con la naturaleza de sus funciones.  De hecho, esa es la práctica en el Cuerpo de Bomberos de Puerto Rico."[6]

Por tanto, la interpretación de la reglamentación municipal, propuesta por los Querellantes, es patentemente incompatible con las funciones de los Querellantes, quienes siempre tienen que estar disponibles y en alerta, debido a que "las emergencias no avisan".[7] Lo mismo sucede con la Policía Municipal.[8]  A lo sumo, ante la ausencia de reglamentación municipal que específicamente atendiese la situación particular de los Querellantes, correspondía

---

[5] El entonces jefe de bomberos municipales, Sr. Germán Santiago Serpa, declaró que en cada uno de los tres turnos los bomberos municipales pueden salir una o dos veces a ingerir alimentos y que dichas instancias pueden extenderse, en promedio, a una hora.  TPO, Tomo IV, pág. 39, líneas 6-12; pág. 53, líneas 1-21. Además, expuso que los bomberos estatales toman sus alimentos del mismo modo que cuestionan los Querellantes: salen todos a la vez en el camión de bomberos a comprar alimentos. *Íd.*, a la pág. 52, líneas 6-21.

[6] Véase, Resolución de 28 de agosto de 2025, Informe de la Oficial Examinadora, Apéndice XV del recurso de revisión administrativa, Entrada de SUMAC TA, págs. 276-277.

[7] TPO, Tomo IV, Sr. Germán Santiago Serpa, pág. 107, línea 20.

[8] *Íd.*, pág. 149, líneas 18-24.

que CASP aplicase las secciones afines del Reglamento de Bomberos Estatales.

En fin, erró la CASP al concluir que los Querellantes debían ser compensados por una hora de almuerzo que ya disfrutaron, y les fue pagada, dentro de la jornada diaria ordinaria de ocho (8) horas.

V.

En virtud de los fundamentos que anteceden, se revoca la *Resolución* recurrida y se deniega el recurso de apelación presentado por los recurridos contra el Municipio de Carolina ante la Comisión Apelativa del Servicio Público.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
